**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JANE DOE, TOBY CROSS, ARTHUR LOPEZ, individually and on behalf of all other similarly situated individuals, <br>             Plaintiffs, | § <br> § <br> § <br> § <br> § | |
|     v. | § <br> § | Case No. 3:13-cv-5013-M |
| COMPACT INFORMATION SYSTEMS, a Washington corporation, DATA SOLUTIONS OF AMERICA, INC., a Florida corporation, ELIZABETH M. BLANK, a Florida individual, ENDURANCE WARRANTY SERVICES, L.L.C., an Illinois limited liability company, KMB STATISTICS, LLC, a Florida corporation, and Doe Individuals and Corporations 1-100 inclusive, <br>             Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |

**DEFENDANT ENDURANCE WARRANTY SERVICES, L.L.C.'S
BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION
<u>AND FOR FAILURE TO STATE A CLAIM</u>**

## **TABLE OF CONTENTS**

MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ..................................... 2

I.     Undisputed Facts Concerning Personal Jurisdiction............................................................ 2

II.    Argument ................................................................................................................................ 5

      A.     Legal Standard for Personal Jurisdiction ................................................................. 5

      B.     Endurance Did Not Have "Continuous and Systematic" Contacts with Texas
             Sufficient to Confer General Personal Jurisdiction ................................................. 7

      C.     Endurance Did Not Purposefully Avail Itself of the Privileges and Benefits of
             Texas Sufficiently to Confer Specific Personal Jurisdiction ................................. 8

      D.     Exercising Personal Jurisdiction over Endurance Would Offend Traditional
             Notions of Fair Play and Substantial Justice......................................................... 12

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ............................................... 13

I.     Plaintiffs' Allegations Concerning Endurance ................................................................. 13

II.    Argument .............................................................................................................................. 15

      A.     Plaintiff States No DPPA Claim Against Endurance in Count I ........................... 15

      B.     Count II States No Claim Against Endurance ...................................................... 17

      C.     The Remaining Counts Should Also Be Dismissed ............................................. 18

Conclusion ....................................................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Cases**

*Agar Corp. v. Multi-Fluid, Inc.*, 1997 U.S. Dist. LEXIS 17121, at *12 (S.D. Tex. June 25, 1997) .................................................................................................................... 8

*Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir. 2000) ......................................... 2

*Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 113-15 (1987)........................................................................................................ 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................... 15

*Baldwin v. Household International, Inc.*, 36 S.W.3d 273, 278 ............................................ 11, 12

*Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 570 (2007) .......................................... 15

*Border Steel, Inc. v. Pacific Century Customs Service, Inc.*, 500 F. Supp. 2d 655, 658 (W. D. Tex. 2006)................................................................................................ 8, 11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)............................................. 6, 7, 8, 9

*Crandon v. United States*, 494 U.S. 152, 168 (1990) .................................................. 17

*Delgado v. Reef Resort, Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004) ..................................... 5

*Freudensprung v. Offshore Technical Services, Inc.*, 373 F.3d 327, 344 (5th Cir. 2004)............. 10

*Gordon v. Softech International, Inc.*, 726 F.3d 42, 50-51 (2d Cir. 2013) ................................. 17

*Graczyk v. West Publishing Co.*, 660 F.3d 275, 280 (7th Cir. 2011)................................. 16, 17, 18

*Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) ......................................................................................................... 8, 10, 11

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ............................................................... 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984).................. 5, 6

*Holt Oil & Gas Corp. v. Harvey*, 801 F.3d 773, 777 (5th Cir. 1986)....................................... 6, 10

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ................................... 5

*Lonza AG v. Blum*, 70 S.W.3d 184, 193 (Tex. App. – San Antonio 2001, pet. denied)........... 7, 12

*Market/Media Research Inc. v. Union-Tribune Publishing Co.*, 951 F.2d 102 (6th Cir. 1991).... 11

*National Industrial Sand Association v. Gibson*, 897 S.W.2d 769 (Tex. 1995) ........................... 11

*Papsan v. Allain*, 478 U.S. 265, 286 (1986) ................................................................ 15

*Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) ........................................................ 2

*Schlobohm v. Schapiro,* 708 S.W.2d 355, 358 (Tex. 1990) .................................................. 9

*Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008) ........................................... 5

*Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985) .................................................. 9

*Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010) ............................................ 16, 17

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107,
   1110 (11th Cir. 2008) ............................................................................ 16

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 (1992) .................................... 17

*Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994) ......................................................... 2

*World-wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 292 (1980) ......................................... 7

**Statutes**

18 United States Code § 2721 ............................................................................ 16

18 United States Code § 2722 ............................................................................ 16

18 United States Code § 2723 ............................................................................ 16

18 United States Code § 2724 ............................................................................ 16

Texas Civil Practice and Remedies Code § 17 ........................................................... 5, 7

Texas Transportation Code Chapter 70 ................................................................... 18

Texas Transportation Code Chapter 730 .................................................................. 18

Texas Transportation Code Chapter 731 .................................................................. 18

**Rules**

Federal Rules of Civil Procedure 12 ............................................................... 2, 15, 18

Federal Rules of Civil Procedure 8 .................................................................. 13, 15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JANE DOE, TOBY CROSS, ARTHUR LOPEZ, individually and on behalf of all other similarly situated individuals,<br>        Plaintiffs,<br><br>        v.<br><br>COMPACT INFORMATION SYSTEMS, a Washington corporation, DATA SOLUTIONS OF AMERICA, INC., a Florida corporation, ELIZABETH M. BLANK, a Florida individual, ENDURANCE WARRANTY SERVICES, L.L.C., an Illinois limited liability company, KMB STATISTICS, LLC, a Florida corporation, and Doe Individuals and Corporations 1-100 inclusive,<br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:13-cv-5013-M |

**DEFENDANT ENDURANCE WARRANTY SERVICES, L.L.C.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**
**AND FOR FAILURE TO STATE A CLAIM**

Defendant Endurance Warranty Services, L.L.C., an Illinois limited liability company

("Endurance"), files this Brief in Support of its Motion to Dismiss for Lack of Personal

Jurisdiction and for Failure to State a Claim, and would respectfully show the Court as follows:

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

I.      **Undisputed Facts Concerning Personal Jurisdiction**

While the Plaintiffs have filed an exceedingly lengthy Second Amended Class Action Complaint ("2AC"), the Complaint is bereft of allegations that show the existence of *in personam* jurisdiction over Endurance in this Court.  When a non-resident defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2), the plaintiff bears the burden of demonstrating the district court's jurisdiction over it. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002); *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir. 2000); *Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994).  Plaintiffs have not met and cannot meet their burden.

Setting to one side the completely conclusory allegations that "defendant EWS has done business within the State of Texas during the Class Period" (2AC ¶ 13) and that "[t]his Court has jurisdiction over defendant Endurance Warranty Services, a corporation headquartered in Illinois, a citizen of the State of Illinois, doing business in Texas" (2AC ¶ 19), very little is said about Endurance to support the asserted personal jurisdiction.  Thus, Plaintiffs allege only the following facts concerning Endurance:

- The motor vehicle records of plaintiff Cross were "used, re-disclosed, resold, and purchased by defendant Endurance Warranty Services, within Texas, which resulted in a solicitation and marketing letter being sent to plaintiff Cross by defendant Endurance Warranty Services, without his express consent."  (2AC ¶ 8)  The contents of the letter are not disclosed or otherwise described.

- The same allegation is made about plaintiff Lopez.  (2AC ¶ 9)

- Endurance is the domain registrant for two websites which describe it as "a nationally recognized automotive service contract provider."  (2AC ¶ 55)

- Endurance sends marketing and solicitation correspondence with its headquarters address in Northbrook, Illinois on it and sends it with a United States postal permit number from Northbrook.  (2AC ¶ 56)

- In addition to the two letters that were received by the two Plaintiffs who reside in Texas (the third Plaintiff resides in Florida), a marketing solicitation letter was received by unidentified Texas State Officials.  (2AC ¶ 82)

Despite the allegations that Endurance "used, re-disclosed, resold, and purchased" motor vehicle records from the other Defendants, Plaintiffs admit that "discovery shall be required to determine if KMB, Blank, and DSOA provided Compact Information Systems, Endurance Warranty Services, or any other entities, the motor vehicle records prior to February 2011," the date when two of the other Defendants ceased receiving Texas motor vehicle records.  (2AC ¶ 87)  Thus, Plaintiffs admit that they have no basis for alleging either that Defendants KMB, Blank and DSOA provided Texas motor vehicle records which presumably (although this is not alleged) included address information for Plaintiffs Cross and Lopez to Defendant Compact Information Services or that any of them or Compact in fact provided those records to Endurance.

Contrasted with this meager showing, the Declaration of Endurance's Vice President, Paul Chernawsky, which is attached to Endurance's Motion to Dismiss, establishes that Endurance completely lacked the contacts with the State of Texas which would be necessary to sustain personal jurisdiction over it in any form.  The Declaration states that Endurance is an Illinois limited liability company with its principal place of business in Northbrook, Illinois.

(Chernawsky Decl. ¶ 2)  It sells automobile service contracts directly to consumers throughout the country through direct mail solicitation which it mails from its Northbrook office.  (*Id.* ¶ 3)  It enters into contracts with customers who respond to its direct mail solicitations at its office in Northbrook and has never accepted any contracts in the State of Texas.  (*Id.* ¶ 3)  Since its founding in 2006, Endurance has only done business at its office in Northbrook and a recently-opened office in Chicago, and nowhere else.  (*Id.* ¶ 4)  All of its employees work in those offices and none of them has traveled to Texas to conduct business there for Endurance.  (*Id.*)

In addition, Endurance has never been licensed to do business in the State of Texas and has never maintained a registered agent in Texas to receive notices or service of process. (*Id.* ¶ 5) It has never maintained any business records in Texas, it does not have any employees or agents who are residents of Texas and it has never performed any administrative functions or held company meetings in Texas.  (*Id.* ¶¶ 6-8)  All of its members and managers are residents of Illinois. (*Id.* ¶ 8)

Further, Endurance has never maintained a telephone, telex or fax number, office or address in Texas; it has never owned, leased, or rented any real or personal property in Texas; it has never had any accounting work done in Texas; it has never applied for a loan or acted as a guarantor or co-signor on a bank loan in Texas; and it has never paid a franchise tax in Texas or maintained a Texas bank account.  (*Id.* ¶¶ 9-13)   Finally, no member, manager, officer or employee of Endurance has ever been physically present in the State of Texas relating to any of the matters alleged in the Complaint.  (*Id.* ¶ 14)

## II.    Argument

### A.    Legal Standard for Personal Jurisdiction

A federal court may exercise personal jurisdiction over a non-resident defendant where the forum state's long-arm statute confers personal jurisdiction over the defendant and due process requirements are met. *Delgado v. Reef Resort, Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004). The Texas Long-Arm Statute extends personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment, which "operates to limit the power of a State to assert *in personam* jurisdiction over a non-resident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984); *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008); *see* TEX. CIV. PRAC. & REM. CODE § 17.042.  As mentioned above, where, as here, a non-resident defendant moves to dismiss the case for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant.

The Due Process Clause only permits jurisdiction over a non-resident defendant which has established "minimum contacts" with the forum state where maintenance of the suit against the defendant does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The Due Process Clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Id.* 319.

The Supreme Court has refined minimum contact analysis by distinguishing specific jurisdiction from general jurisdiction.  When specific jurisdiction is asserted, the minimum contacts test is satisfied when the cause of action arises out of or relates to the non-resident defendant's contacts with the forum state.  *Helicopteros*, 466 U.S. at 414.  More specifically, consistent with the Due Process requirement that individuals have "fair warning that a particular

activity may subject [them] to the jurisdiction of a foreign sovereign," the non-resident defendant's activities must have been "purposely directed" to the forum and the litigation must result from the alleged wrongdoings that "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks removed). Thus, the non-resident defendant must purposefully avail itself of the privileges and benefits of the forum. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" requirement insures that a corporate defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous or attenuated" contacts. *Burger King*, 471 U.S. at 475. This requirement also ensures that jurisdiction will not be based upon the "unilateral activity of another party or a third person." *Helicopteros*, 466 U.S. at 417. In analyzing specific jurisdiction, the focus is on the relationship between the defendant, the forum and the litigation. *Id.* at 414.

The exercise of general jurisdiction over a non-resident defendant, in contrast to the exercise of specific jurisdiction, does not require the cause of action to arise from or relate to the non-defendant's conduct within the forum state. Instead, the non-resident must have "continuous and systematic contacts" with the forum that are unrelated to the litigation. *Id.* at 414-16. As the Fifth Circuit has observed, "the continuous and systematic contacts test is a difficult one to meet, *requiring extensive contacts between defendant and a forum*." *Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) (emphasis added) (citing *Helicopteros*, 466 U.S. at 417). *See also Holt Oil & Gas Corp. v. Harvey*, 801 F.3d 773, 777 (5th Cir. 1986).

Even if the evidence establishes the minimum contacts necessary to create specific or general personal jurisdiction over a non-resident defendant, the plaintiff must also establish that the exercise of personal jurisdiction does not offend "traditional notions of fair play and

substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, *Solano County*, 480 U.S. 102, 113-15 (1987).  The Supreme Court has set forth several fairness factors to be considered in this regard.  *Burger King*, 471 U.S. at 476-77; *World-wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 292 (1980).  These factors are "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies."  *Burger King*, 471 U.S. at 476-77 (internal quotation marks removed); *Lonza AG v. Blum*, 70 S.W.3d 184, 193 (Tex. App. – San Antonio 2001, pet. denied).

### B.  Endurance Did Not Have "Continuous and Systematic" Contacts with Texas Sufficient to Confer General Personal Jurisdiction

The Texas Long-Arm Statute provides:

In addition to other acts that may constitute doing business, a non-resident does business in this state if the non-resident:

(1)     contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2)     commits a tort in whole or in part in this state; or

(3)     recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE § 17.042.

The undisputed facts show that Endurance did nothing in Texas beyond sending what is described as a "solicitation and marketing letter" to two of the Plaintiffs and an unidentified Texas State Official.  No details about the contents of the letters is provided in the Second Amended Complaint.  Endurance is not alleged to have entered into a contract with either of the Texas Plaintiffs, with the Texas State Officials, or with any other Texas resident.

Furthermore, the Chernawsky Declaration affirmatively shows that Endurance did not have continuing and systematic contacts with the State of Texas. Formed and officed solely in Illinois, Endurance has had no office or business address in Texas and did not send its employees to Texas to conduct its business here. It has never been registered to do business in Texas and has performed no business functions of any kind here.

Clearly, there is no evidence that Endurance had the "continuing and systematic" contacts with the State of Texas that would be required to confer general personal jurisdiction on this Court. *See, e.g.*, *Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (entering into a contract with a Texas entity, mailing payments to it in Texas and engaging in communications with it while carrying out the contract do not establish personal jurisdiction over a non-resident defendant); *Border Steel, Inc. v. Pacific Century Customs Service, Inc.*, 500 F. Supp. 2d 655, 658 (W. D. Tex. 2006) (a contract and mailings do not establish general personal jurisdiction); *Agar Corp. v. Multi-Fluid, Inc.*, 1997 U.S. Dist. LEXIS 17121, at *12 (S.D. Tex. June 25, 1997) (sporadic mail solicitations alone are insufficient to create general personal jurisdiction).

### C.   Endurance Did Not Purposefully Avail Itself of the Privileges and Benefits of Texas Sufficiently to Confer Specific Personal Jurisdiction

As discussed above, this Court's exercise of specific personal jurisdiction over Endurance would only be proper if it had "purposeful" contacts with the State of Texas and Plaintiffs' "cause of action . . . arise[s] from or relate[s] to those contacts." *Burger King Corp.*, 471 U.S. at 472. On the facts alleged in the Second Amended Complaint and those presented by the Chernawsky Declaration, it is clear that Plaintiffs do not and cannot meet their burden of proving that Endurance has undertaken some act or conduct which brings it within the Texas Long-Arm

Statute.  At most, Endurance had only "random, fortuitous or attenuated" contacts through its mailings, which is insufficient to hale it into this jurisdiction.  *Id.* at 475.

What constitutes purposeful availment has been the subject of numerous decisions which carefully assess the course of dealing between a plaintiff and a defendant as parties to a contract. Even where, unlike here, a contract has been made with a plaintiff who resides in the forum state, that fact alone does not establish sufficient minimum contacts with the forum state.  *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985).  In this regard, quoting *Burger King*, 471 U.S. at 479, the *Stuart* court held:

> Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." . . . It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

772 F.2d at 1193.

Likewise, the Texas Supreme Court set forth its formula for specific jurisdiction in *Schlobohm v. Schapiro,* 708 S.W.2d 355, 358 (Tex. 1990):

> (1) The non-resident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

> (2) The cause of action must arise from, or be connected with such act or transaction.  Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendants' contacts with Texas are continuing and systematic.

> (3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, for the benefits and protection of the laws of the forum state afforded the respective parties and the basic equities of the situation.

Operation of the standard for specific jurisdiction is illustrated by the Fifth Circuit's decision in *Holt Oil & Gas,* where the court examined whether "an exercise of specific jurisdiction was permissible" under the facts of the case.  Those facts were that the non-resident defendant's only contacts with Texas relating to the matter in controversy were that: (1) it entered into a contract with the plaintiff Texas corporation; (2) it sent a final revised agreement from Oklahoma to the plaintiff in Texas; (3) it sent three checks from Oklahoma to Texas in partial performance of its contractual obligations; and (4) it engaged in "extensive telephonic and written communication" with the plaintiff during the course of the contract.  801 F.2d at 778.  The Fifth Circuit concluded that "these limited contacts were insufficient to support an exercise as specific jurisdiction," since "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction," and because of "the fact that performance of the contract was centered in Oklahoma rather than Texas."  *Id.*

Likewise, the Fifth Circuit found that contacts with the State of Texas by contracting with a Texas-based corporation, contemplating arbitration of disputes in Texas, and initiating and contemplating a long-term relationship with a Texas corporation were "limited contacts with the forum state [that] were insufficient to support the exercise of specific jurisdiction" over the non-resident defendant.  *Freudensprung v. Offshore Technical Services, Inc.*, 373 F.3d 327, 344 (5th Cir. 2004).

The Fifth Circuit reached the same conclusion in *Gundle Lining Construction*, where the claimed contacts with the State of Texas were the non-resident defendant's entering into a contract with a Texas company to do construction in Pennsylvania, the defendant mailed payments to the plaintiff in Texas, and it engaged in communications with the Texas company while developing and carrying out the contract.  These contacts were found insufficient to confer

specific jurisdiction over the nonresident defendant. 85 F.3d at 205. *See also Border Steel,* 500 F. Supp. 2d at 660 (contracting with the plaintiff Texas company, mailing customs brokerage entry summaries to it and becoming its agent did not demonstrate "that Defendant purposefully established minimum contacts with Texas").

The result was the same in *Market/Media Research Inc. v. Union-Tribune Publishing Co.*, 951 F.2d 102 (6th Cir. 1991), a case whose facts are very close to the facts of this case. The Sixth Circuit found that making telephone calls and sending correspondence to the plaintiff in the forum state which solicited a marketing services agreement that was never executed, where the defendants were never present in the forum state and never intended to execute a contract there, do not "rise to the level of 'purposeful availment.'" *Id.* at 105-06.

The Texas Supreme Court reached a similar result in *National Industrial Sand Association v. Gibson*, 897 S.W.2d 769 (Tex. 1995). In that case, the defendant trade association had sent periodic mailings to Texas residents as part of its nationwide informational mailings. The mailings were alleged to be part of a conspiracy to suppress information on the dangers of silica and to defeat an attempt to ban the use of abrasives containing high levels of silica. Such limited contacts with the State of Texas were insufficient to establish specific personal jurisdiction over the non-resident defendant for claims based on negligence and products liability. *Id.* at 776. *See also Baldwin v. Household International, Inc.*, 36 S.W.3d 273, 278 (Tex. App. – Houston [14[th] Dist.], no pet.) (mailing a notice to a Texas resident in connection with alleged stock fraud is insufficient to establish specific personal jurisdiction).

In this case, to the extent that Plaintiffs assert a contract-based claim against Endurance, it is clear that merely sending marketing and solicitation letters to persons who reside in Texas, where Endurance had no other contact with the State of Texas in connection with those mailings,

and did not even enter into a contract with them, there can be no specific personal jurisdiction over it which meets the minimum requirements of the Due Process Clause. The same is true if Plaintiffs are seeking a tort-based remedy.

> **D.     Exercising Personal Jurisdiction over Endurance Would Offend Traditional Notions of Fair Play and Substantial Justice**

An analysis of the fairness factors mentioned above is only appropriate when the non-resident defendant has minimum contacts with the forum sufficient to establish personal jurisdiction. Because Endurance does not have minimum contacts with Texas, it is not necessary to analyze the fairness factors. *Baldwin*, 36 S.W. 3d at 277.

However, even if Endurance did have minimum contacts with Texas, the fairness factors would require this Court to decline to exercise jurisdiction over it. Four of the five fairness factors can be characterized as relating to State of Texas' interest in advancing public policy by adjudicating the dispute or in plaintiffs' interest in obtaining efficient, convenient and effective relief. *See Lonza AG*, 70 S.W. 3d at 193.

In this case, the burden on Endurance in defending a case in a distant forum with which it has no contacts is plain. The State of Texas would have no special interest in adjudicating this dispute, which allegedly covers mailed solicitations that are nationwide in scope, including to one plaintiff who resides in Florida, not in Texas. The interstate judicial system's interest in obtaining the most efficient resolution of the controversy would be better served by an adjudication in a forum which has clear personal jurisdiction over Endurance. The same is true with respect to the interest of other states in furthering fundamental substantive social policies.

For all of the foregoing reasons, this Court should find that it lacks *in personam* jurisdiction over Endurance, and dismiss it from this case.

<u>**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**</u>

Even if this Court were to find that it does have personal jurisdiction over Endurance, Plaintiffs' Second Amended Complaint should nevertheless be dismissed for failure to state a claim against it, for the following reasons.

**I.**    <u>**Plaintiffs' Allegations Concerning Endurance**</u>

Federal Rule 8(a)(2) requires that a plaintiff's complaint "must contain: . . . a short and plain statement of the claim showing that the plaintiff is entitled to relief."  Despite its extreme prolixity, Plaintiffs' Second Amended Complaint contains almost nothing in its 99 pages and 303 numbered paragraphs that relates to Endurance.  What little the Plaintiffs do say about Endurance can be summarized as follows:

- Endurance sent marketing and solicitation letters to Plaintiffs Cross and Lopez, who are residents of Texas, without their express consent to do so.  (2AC ¶¶ 8-9)

- Endurance is an Illinois corporation that did business in Texas.  (2AC ¶ 13)

- The Court has jurisdiction over Endurance.  (2AC ¶ 19)

- Endurance is the domain registrant of two websites that describe its business as an automobile service contract provider.  (2AC ¶ 55)

- Endurance sends marketing and solicitation correspondence from its headquarters in Northbrook, Illinois which puts information about the recipient's vehicle on the outside of the envelope.  (2AC ¶ 56)

- An Endurance marketing and solicitation letter was received by unidentified Texas State Officials.  (2AC ¶ 82)

- Plaintiffs need discovery to determine whether any of the Defendants provided Endurance with motor vehicle records prior to February 2011.  (2AC ¶ 87)

- Endurance's website describes it as a direct marketing company. (2AC ¶ 144(a))

- Despite their admitted lack of knowledge whether any motor vehicle records were ever improperly obtained by Endurance, Plaintiffs assert that there is an Endurance Subclass consisting of persons whose motor vehicle records were obtained by Endurance directly or indirectly from other Defendants for purposes including direct marketing and solicitation, without their express consent.  (2AC ¶ 175(b))

- Plaintiffs assert that there are common questions of law and fact concerning whether Endurance violated the DPPA, violated state motor vehicle records disclosure acts or violated common law in other ways; whether Endurance had a duty to use reasonable care to determine what the other Defendants did; and what statutory penalties or damages should be assessed against Endurance.   (2AC   ¶¶   189(e1)-(e8), 189(o),189(q))

Based on the foregoing allegations, Plaintiffs lump Endurance together with the other Defendants by claiming that "Defendants" violated the DPPA in Count I (2AC ¶ 192); violated state motor vehicle records disclosure acts in Count II (2AC ¶ 215); committed a common law breach of bailment in Count III; (2AC ¶ 234); committed common law conversion in Count IV (2AC ¶ 246); committed common law invasion of privacy in Count V (2AC ¶ 257); violated common law negligence in Count VI (2AC ¶ 269); committed common law trespass to personal property in Count VII (2AC ¶ 286); and were unjustly enriched in Count VIII (2AC ¶ 297). However, Plaintiffs' allegations concerning Endurance are insufficient to state a plausible claim against it under any of these Counts.

## II.   Argument

### A.   Plaintiff States No DPPA Claim Against Endurance in Count I

A motion to dismiss pursuant to Federal Rule 12(b)(6) must be granted if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face" or if the complaint merely alleges a conceivable, rather than a plausible, set of facts that entitles the plaintiff to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 570 (2007).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).   In fact, legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 555; *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).  Additionally, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Accordingly, a pleading is deficient on its face "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, [because] the complaint has alleged – but it has not 'show[n]' – that the pleader is 'entitled to relief'" *Iqbal*, 556 U.S at 679 (citing Federal Rule 8(a)(2)).

Here, dismissal of Count I is appropriate because:  (1) Plaintiffs' Second Amended Complaint fails to describe in sufficient factual detail the grounds on which its alleged DPPA claim against Endurance rests; and (2) their Complaint fails to show that they have a right to relief by providing factual allegations that rise above the "speculative level."  *Twombly*, 550 U.S. at 555.  Relying on a merely "speculative" right to relief, based on nothing more than rank conjecture, Plaintiffs have failed to satisfy the Supreme Court's "plausibility" standard.

The DPPA, 18 U.S.C. § 2721 *et seq.*, is part of the United States Criminal Code and provides that state Departments of Motor Vehicles and their officers, employees and contractors "shall not knowingly disclose or otherwise make available to any person or entity" individuals' personal information except as the DPPA allows. 18 U.S.C. § 2721(a). The DPPA also provides that it is a violation of the statute for any person "knowingly to obtain" drivers' personal information from motor vehicle records for uses that are not permitted under the statute. 18 U.S.C. § 2722(a). Both such violations are subject to criminal fines under Title 18. 18 U.S.C. § 2723(a). In addition to criminal penalties, the DPPA provides a civil cause of action against any person "who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a).

As the Eleventh Circuit observed, by specifically providing fourteen "permissible uses" in section 2721(b) of the DPPA, "Congress made clear that not all obtainment, disclosure, or use of personal information from motor vehicle records is wrongful." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008). Thus, the Seventh Circuit has noted that in addition to protecting drivers' personal information which they have submitted to state departments of motor vehicles, Congress had a "countervailing purpose, which is to allow legitimate users to access the records." *Graczyk v. West Publishing Co.*, 660 F.3d 275, 280 (7th Cir. 2011).

It is therefore important that *all* of the elements of a DPPA violation be properly alleged to state a plausible claim for violation of the Act. The three elements of a civil violation of the DPPA are: "(1) the defendant knowingly obtains, discloses or uses personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted." *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010) (citing *Thomas*, 525 F.3d at 1111). As the *Taylor* court noted,

"section 2723(a) makes knowing violation of the DPPA a crime, and accordingly to the extent that violation of the DPPA is at issue in even a civil case, to the extent of ultimate liability in the statute's meaning it must be construed under the rule of lenity." *Taylor*, 612 F.3d at 334 (citing *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 (1992); *Crandon v. United States*, 494 U.S. 152, 168 (1990)). *See also Graczyk*, 660 F.3d at 677 (noting the "knowing obtainment" requirement for liability under section 2722(a)); *Gordon v. Softech International, Inc.*, 726 F.3d 42, 50-51 (2d Cir. 2013) (the "knowingly" element of a DPPA violation precludes strict liability for the acts of downstream recipients of motor vehicle recipients).

In this case, Plaintiffs' Second Amended Complaint utterly fails to allege facts that show a plausible claim against Endurance because it "knowingly obtained" their personal information from motor vehicle records for an unpermitted purpose, as they must do under the standard set by the Supreme Court. Indeed, pleading themselves out of court, Plaintiffs admit that they have no evidence that Endurance ever purchased motor vehicle department records containing personal information from any of the other Defendants, much less that it did so knowingly and for an unpermitted purpose. (2AC ¶ 87) In the absence of such factual allegations, Plaintiffs' DPPA claim against Endurance relies upon mere speculation, by their own admission. Count I of the Second Amended Complaint should therefore be dismissed with prejudice.

> ### B. Count II States No Claim Against Endurance

Count II alleges that "Defendants" violated state motor vehicle records disclosure acts, listing statutes in 50 states. (2AC ¶ 218) However, Plaintiffs specifically admit that they have no basis for making such allegations against Endurance until they obtain discovery to determine which states it did business in (*id.*), in addition to admitting that they have no evidence that Endurance ever purchased motor vehicle records from any of the other Defendants. (2AC ¶ 87)

Apart from issues of personal jurisdiction discussed above in Endurance's Rule 12(b)(2) Motion to Dismiss, Count II states no claim against Endurance because it fails to identify how, even if Plaintiffs had properly alleged that it violated one or more of the state acts, they would have any civil action against it for such a violation.

Looking only at the Texas law (which is unhelpfully cited as TEX. TRANSP. CODE ch. 70, 731),[1] TEX. TRANSP. CODE ch. 730 contains no private right of action, unlike the federal DPPA. The Second Amended Complaint contains no allegation that explains how a violation of the Texas Act, or of any other state's statute, is actionable by a private individual as opposed to law enforcement authorities.  For this reason alone, in addition to failing to allege that Endurance violated the Texas Act or any other state's statute, Count II should be dismissed with prejudice, as well.

### C.      The Remaining Counts Should Also Be Dismissed

Each of the remaining counts of the Complaint (Counts III through VIII), to the extent that it purports to assert any claim against Endurance, is predicated upon the "Defendants . . . engaging in the acts alleged in this Complaint."  (2AC ¶¶ 234, 246, 257, 269, 286, 297)  Since Plaintiffs have failed to state a DPPA claim against Endurance in Count I, which should therefore be dismissed, Counts III through VIII should also be dismissed with prejudice.  *See, e.g., Graczyk,* 660 F.3d at 281 (dismissal of DPPA claim requires dismissal of claims for unjust enrichment and injunctive relief).

---

[1] Chapter 70 does not relate to protection of drivers' personal information and chapter 731 was repealed in 2001.

## Conclusion

For all of the foregoing reasons, Plaintiffs have failed to sustain their burden of proving that Endurance either has systematic and continuous contacts with Texas or that it purposefully directed any act toward Texas that gave rise to Plaintiffs' claims against it, or that if it did so, it would not offend traditional notions of fair play and substantial justice for this Court to exercise personal jurisdiction over Endurance.  Therefore, Texas courts cannot constitutionally exercise *in personam* jurisdiction over Endurance.  Even if Plaintiffs had met their burden to establish personal jurisdiction over Endurance, they have failed to state any claim against it upon which relief can be granted.

WHEREFORE, PREMISES CONSIDERED, Defendant, Endurance Warranty Services, L.L.P., respectfully requests that this Court:

1.      Find that *in personam* jurisdiction cannot be constitutionally exercised over it in Texas;

2.      Find that Plaintiffs fail to state claims against it for violation of the Driver's Privacy Protection Act or under state statutory or common law;

3.      Enter an order granting its Motion to Dismiss and dismissing Endurance with prejudice from this suit; and

4.      Grant such other and further relief as is equitable and just.

Respectfully submitted,

*/s/ Melissa A. Dorman*
**MELISSA A. DORMAN**
State Bar No. 00790603
**HARTLINE DACUS BARGER DREYER LLP**
6688 N. Central Expy., Suite 1000
Dallas, Texas 75206
(214) 369-2100 telephone
(214) 267-4271 direct fax


John L. Ropiequet
Steven N. Malitz
Applications to Appear Pro Hac Vice Pending
**ARNSTEIN & LEHR LLP**
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606
(312) 876-7100 telephone
(312) 876-0288 fax

**ATTORNEYS FOR ENDURANCE WARRANTY
SERVICES, L.L.C.**


## CERTIFICATE OF SERVICE

On this the 20th day of February, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).


*/s/ Melissa A. Dorman*
Melissa A. Dorman