Joseph H. Malley (TX State Bar No: 12865900)
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Blvd
Dallas, TX 75208
Telephone: (214) 943-6100
Facsimile: (214) 943-6170

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JANE DOE, TOBY CROSS ARTHUR LOPEZ; individually, and on behalf of a themselves and all others similarly situated individuals, | No. 3:13-cv-05013-G |
| Plaintiffs, | Honorable Barbara M.G. Lynn |
| V. | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| COMPACT INFORMATION SYSTEMS, INC., a Washington Corporation; DATA SOLUTIONS OF AMERICA, INC., a Florida Corporation; ELIZABETH M. BLANK, a Florida Individual; ENDURANCE WARRANTY SERVICES, a Illinois Corporation; KMB Statistics, LLC, a Florida Corporation; and Doe Individuals and Corporations 1-100 inclusive, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

I. INTRODUCTION …………………………………………………………………......1

II. FACTUAL BACKGROUND……………………………………………………….2

III. LEGAL STANDARD FOR CLASS CERTIFICATION…………..…………………………..3

    A. Plaintiffs Have Satisfied The Requirement Under Rule 23 For Class
    Certification……………………………………………………………………...3

    B. Rule 23(a) – Class Action Prerequisites……………………………………….5

        i. Numerosity………..……………………….....……………………...5

        ii. Commonality……………………….....……………………………6

        iii. Typicality…………………….……....……………………………7

        iv. Adequacy……………………….....………………………………7

    C. Rule 23(b)(1) & (2)……………………………....................................8

    D. Rule 23(b)(3)…………………………….....................................9

        i. Predominance……………………….....………………………9

        ii. Superiority………………….....………………………………10

IV. ARGUMENT…………………………....…….................................11

    A. The Prerequisites of Rule 23(a) Have Been Met..........................................11

        i. The Class is so Numerous that Individual Joinder is Impracticable because the
        Defendant Violated the Federally Protected Rights of approximately Millions.......11

        ii. Questions of Law or Fact are Common to Members of the Class..........................12

        iii. Plaintiffs' Claims are Typical of Those of the Class Because Both Plaintiffs'
        And The Class' Claims Arise From the Same Course of Conduct and are Based
        on the Same Legal Theories...................................................................14

        iv. The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the
        Interests of the Class............................................................................15

    B. Plaintiffs' Claims Satisfy the Requirements of Rule 23(b)............................................16

        i. The Class Qualifies Under Rule 23(b)(1)……………………………….......17

        ii. The Class Also Qualifies Under Rule 23(b)(2)……………………….......18

i

iii. Alternatively, This Case Satisfies the Standards for Class Certification Under Rule 23(b)(3)……………………………………………………………......20

   a. Here, Common Questions Clearly Predominate Over Individual Questions….20

   b. DPPA Lawsuits Are Clearly More Fairly and Efficiently Litigated Via the Class Action Device…………………………………………………...............21

V. SPECIFIC RESPONSE TO LR 23.2 INQUIRY……………………………………….22

VI. CONCLUSION……………………………………………………………………25

## CASES

*Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012)...........5

*In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012); *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007)......................................................................……………….5

*Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007)........…………………5

*See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)…………………......…………………..5

*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)…………….…………………6

*Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551(2011)……………….……………..6

Rubenstein v. Collins, 162 F.R.D. 534, 536 (S.D. Tex. 1995 (Hoyt, J.)…………………………6

In re Enron Corp. Securities Derivative "ERISA" Litigation, 228 F.R.D. 541, 555 (S.D. Tx. 2005)…………………………………………………………………………………………6

Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 178 (1974)…………….……………………6

*E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896 (1977)……………………………………………………………………………………6

*In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004)……..……………………6

*Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001)………………….6

*Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)........................7

*In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013)..............................................………7

*Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980)............................................…………7

*Wal–Mart Stores,* 131 S. Ct. at 2551-2552..............................................................7

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–195 (2013)............7

Stukenberg v. Perry, 675 F.3d 832, 840 (5th Cir. 2012)...................................................................7

Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982)......................................................................8

Wal-Mart Stores, 131 S. Ct. at 2556.................................................................................................8

Jenkins v. Raymark Industries, 782 F.2d 468, 472 (5th Cir. 1986)................................................8

*Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)..................................................8

*Philips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981)....................................................................................................................................8

James v. City of Dallas, Tex., 254 F.3d 551, 571 (5th Cir. 2001)....................................................8

Berger v. Compaq Computer Corp., 257 F.3d 475, 482-83 (5th Cir. 2001)....................................9

Feder v. Elec. Data Sys. Corp., 429 F3d 125, 130 (5th Cir 2005)...................................................9

Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 626 (5th Cir. 1999)....................................9

Mertz v. Harris, 497 F. Supp. 1134, 1139 (S.D. Tex. 1980)............................................................9

Dale Electronics, Inc. v. R.C.L. Electronics, Inc., 53 F.R.D. 531, 536-37 (D.N.H. 1971)..............9

In re Jackson Lockdown/MCO Cases, 107 F.R.D. 703, 711-12 (E.D. Mich. 1985)........................10

Robertson v. National Basketball Ass'n, 556 F.2d 682, 685 (2nd Cir. 1977)................................10

In re Jackson Lockdown/MCD Cases, 107 F.R.D. 703, 710-11 (E.D. Mich. 1985)........................10

Edmonson v. Simon, 86 F.R.D. 375, 383 (N.D. Ill. 1980)..............................................................10

Day v. NLO, 851 F. Supp. 869, 886-87 (S.D. Ohio 1994)..............................................................10

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)......................................................10

*Funeral Consumers Alliance*, 695 F.3d at 348-49.........................................................................10

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)..................................11

*O'Sullivan v. Countrywide Home Loans, Inc.,319 F3d 732, 738 (5th Cir 2003)*...........................11

*Bell Atlantic Corp. V. AT&T Corp.*, 339 F.3d 294, 307 n. 17 (5th Cir. 2003)..............................11

*Mullen*, 185 F.3d 620..................................................................................................................11

*In re TWL Corp.*, 712 F.3d at 896.................................................................................................12

*Amchem Products, Inc.*, 521 U.S. at 615–616.................................................................12

*Boyd v. Ozark Airlines, Inc.,* 568 F.2d 50, 54 (8th Cir. 1977); *Robinson v. Sears, Roebuck & Co.*, 111 F. Supp.2d 1101, 1120 (E.D. Ark. 2000)........................................................................12

Emanuel v. Marsh, 828 F.2d 438, 444 (8th Cir. 1987).....................................................13

Jackson v. Rapps, 132 F.R.D. 226, 230 (W.D. Mo. 1990).................................................13

*Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982)............................13

*Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir. 1977)...........13

*Sagers v. Yellow Freight Sys., Inc.*, 529 F.2d 721 (5th Cir. 1976)....................................13

*Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995).......................................14

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 10 (9th Cir. 1998)...........................................14

*Deboer v. Mellon Mfg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)......................................14

*Morgan v. United Parcel Service,* 169 F.R.D. 349, 355 (E.D. Mo. 1996).........................14

*Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir. 1977) .......................................15

*DeBoer v. Mellon Mortgage Co.,* 64 F.3d at 1174...........................................................15

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) ............................15

*Lindquist v. Brown*, 633 F. Supp. 846, 859 (W.D. Mo. 1986) .........................................16

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ........................................16

*In re Tetracycline Cases*, 107 F.R.D. 719, 730 (W.D. Mo. 1985) ...................................16

*Morgan v. UPS*, 169 F.R.D. at 357.................................................................................17

*Atwood v. Burlington Industries Equity, Inc.*, 164 F.R.D. 177, 178 (M.D. N.C. 1985)...............17

*McGlothlin v. Connors*, 142 F.R.D. 626, 640 (W.D. Va. 1992) ......................................17

*Reynolds v. National Football League*, 584 F.2d 280, 283 (8th Cir. 1978) ....................17

*Kohl v. Ass'n of Trial Lawyers of America*, 183 F.R.D. 475, 485-86 (D. Md. 1998)..................17

*Capital Cities/ABC, Inc. v. Ratcliff*, No. 94-cv-2448, 1996 WL 507285, at *4...........................17

*Amchem Products, Inc. v. Windsor*, 521 U.S. at 614.......................................................20

*Santiago v. City of Philadelphia*, 72 F.R.D. 619, 625-26 (E.D. Pa. 1976)......................20

iv

*Marshall v. Kirkland*, 602 F.2d 1282, 1295 (8th Cir. 1979) .........................................................20

*Sperry Rand Corp. v. Larson*, 554 F.2d 868, 875 (8th Cir. 1977) ...............................................20

*Alliance to End Repression v.Rochford*, 565 F.2d 975, 979 (7th Cir. 1977) ..............................20

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 616 (9th Cir. 2010)……………………………20

*Sullivan v. DB Investments, Inc.*, 613 F.3d 134, 156 (3rd Cir. 2010)…………………….......20

*Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3rd Cir. 2006))………………………………………20

*Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 223089, at *3 (S.D. Fl. May 14, 2007)…………………………………………………………………………………………..21

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3rd Cir. 1977)…………………………......………21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623…………………………………………......21

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010) (citing *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)……………………………………………….......21

*Blades v. Monsanto Co.*, 400 F.3d at 566……………………………………………….......21

## STATUTES

Driver's Privacy Protection Act, 18 U.S.C. §2721………………………………..............………..4

18 U.S.C. § 2724(b)(1)……………………………………….....................................……16

18 U.S.C. § 2721(b)……… …… …………………………………………………………19

28 U.S.C. § 1332……………...…………………………….....................................……25

## OTHER AUTHORITIES

Fed. R. Civ. P 23…………………………………………………........................................3

Fed. R. Civ. P 23(g)……………….....................………….....................……….............……3

5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[6], at 23–62.2 (3d ed. 2003)……......………………………………………………………………….6

FED. R. CIV. P. 23(a)(1)……… …………………………………………….............…..7

v

*In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013)…………………...............................7

FED. R. CIV. P. 23(a)(2)…………………............ ……………………..............…7

FED. R. CIV. P. 23(a)(3)……………… ……………………………………..............8

5 JAMES WM. MOORE ET AL.,MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)...........................................................................................................................................8

FED. R. CIV. P. 23(a)(4)…………………………………………………………….8

1 NEWBERG 4.14; WRIGHT & MILLER 1775……………………….................10

Rule 23(b)(3)………………………………………………….......…………….10

2 NEWBERG ON CLASS ACTIONS § 4:51 (5th ed.)………………................... ……………11

7AA WRIGHT,MILLER, &KANE, FEDERAL PRACTICE &PROCEDURE § 1783, at 322 (3d ed. 2005)……………….................................... ………………………………………….12

*NEWBERG ON CLASS ACTIONS*, Third Ed., § 3.05……………..………………………13

7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1788 at 528………..………14

Rule 23(a)(2)……………………………………………………………….......….15

Rule 23(a)(3)…………………………………………………………...........….15

Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.13, at 167 (2d ed. 1985)……………………………………..………….15

Fed.R.Civ.P. 23(g)(1)(C)(1)…………………………………………………......….17

Fed.R.Civ.P. 23(b)(2)……………………………………………..………….19

*Merriam-Webster's Collegiate Dictionary* 978 (11th ed. 2004)………………………..……….20

Fed.R.Civ.P. 23(b)(3)……………………………………………...………….22

Fed. R. Civ. P. 23(b)(3)……………………………………………..................22

F.R.C.P. 33 and 34………………………………….....................................26

Local Rule 7.1(b)……………………………………………..................27

LR 23.2……………………………………………………………......………27

Joseph H. Malley (TX State Bar No: 12865900)
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Blvd
Dallas, TX 75208
Telephone: (214) 943-6100
Facsimile: (214) 943-6170

*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| JANE DOE, TOBY CROSS ARTHUR LOPEZ; individually, and on behalf of a themselves and all others similarly situated individuals,<br><br>                              Plaintiffs,<br><br>V.<br><br>COMPACT INFORMATION SYSTEMS, INC., a Washington Corporation; DATA SOLUTIONS OF AMERICA, INC., a Florida Corporation; ELIZABETH M. BLANK, a Florida Individual; ENDURANCE WARRANTY SERVICES, a Illinois Corporation; KMB Statistics, LLC, a Florida Corporation; and Doe Individuals and Corporations 1-100 inclusive,<br><br>                              Defendants. | No. 3:13-cv-05013-G<br><br>Honorable Barbara M.G. Lynn<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

## I.    INTRODUCTION

COMES NOW, Plaintiffs, Jane Doe, Toby Cross, and Arthur Lopez, on behalf of themselves and

all others similarly situated, by and through their attorneys, Law Offices of Joseph H. Malley,

P.C., and hereby submits this memorandum of law in support of their motion to respectively

1

move this Court for Class Certification of Plaintiffs' Second Amended Complaint, pursuant to Fed. R. Civ. P. 23, and in accordance with Local Rule 23.2 of the United States District Court for the Northern District of Texas. Plaintiffs also request that Plaintiffs' Counsel be appointed to represent the certified class, pursuant to Fed. R. Civ. P. 23(g).

## II.   FACTUAL BACKGROUND

Plaintiffs commenced this action against Defendant Elizabeth M. Blank, KMB Statistics, LLC, Data Solutions of America, Inc., Compact Information Systems, Inc. (hereinafter collectively to as "CIS Entities"), and Endurance Warranty Services Doe Individuals and Corporations 1-100 inclusive, (hereinafter referred collectively to as "CIS Affiliates"), based upon Defendant's unfair, deceptive, and unlawful business practices; wherein their privacy and security rights were violated by Defendants that acted independently, and in concert, and each knowingly authorized, directed, ratified, approved, acquiesced, or participated, in conduct made the basis of this class action, acting in a capacity best described colloquially as either a "Supplier," or "Dealer", in acts that include one (1) or more of the following: (1) Obtain, directly or indirectly, Plaintiffs' and Class Members' Motor Vehicle Records (hereinafter referred to as MVRs"), maintained by the State Motor Vehicle Department, for purposes that violate the Driver's Privacy Protection Act (hereinafter referred to as "DPPA"); (2) Use, process, and re-disclose, Plaintiffs' and Class Members' MVRs for purposes that violate the DPPA; (3) Resell Plaintiffs' and Class Members' MVRs for purposes that violate DPPA; (4) Obtain, directly or indirectly, Plaintiffs' and Class Members' MVRs to direct market and solicit Plaintiffs' and Class Members', without their express consent, for purposes that violate the Driver's Privacy Protection Act, 18 U.S.C. §2721. A sequence of events which as follows: (1) CIS Entities obtained the State MVR database; (2) CIS Entities transferred the State MVR database to CIS Affiliates; (3) CIS Affiliates used the State MVR database for Direct Marketing and Solicitation of

2

Plaintiffs and Class Members, without their express consent.

Defendant CIS Entities cannot deny they obtained the State Motor Vehicle databases, Plaintiffs obtained proof thereof, nor can Defendant CIS Affiliate EWS deny it sent Direct Marketing and Solicitation letters. The State of Texas Motor Vehicle Department representatives investigating such actions received the EWS letters related to "test" individuals sold to Defendant CIS Entities, and Plaintiffs and putative Class Members also received the letters. Any dispute by the Defendants as to the material facts of this case are without merit.

Defendant's acts violated: (1) Violations of the Driver's Privacy Protection Act, 18 U.S.C. §2721; (2) Violations of the State Motor Vehicle Records Disclosure Acts; (3) Breach of Bailment; (4) Conversion; (5) Invasion of Privacy and Seclusion and Public Disclosure of Private Facts; (6) Negligence; (7) Trespass to Personal Property / Chattels; and (8) Unjust Enrichment

## III.    LEGAL STANDARD FOR CLASS CERTIFICATION

### A.  Plaintiffs Have Satisfied The Requirements Under Rule 23 For Class Certification.

Rule 23 of the Federal Rules of Civil Procedure allows the Plaintiffs to sue on behalf of themselves, individually, and also on behalf of a "Class" of unnamed individuals who are similarly situated. The United States Supreme Court has noted that "the Class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [Class member] to be litigated in an economical fashion under Rule 23."[1] A Plaintiff seeking to certify a class must first satisfy the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure, by showing that:

1.  The proposed class is so numerous that joinder of all members is impracticable;

2.  There are questions of law and fact common to the proposed class;

---

[1] *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

3. The claims or defenses of the representative parties are typical of the claims or defenses of the proposed class; and

4. The representative parties will fairly and adequately protect the interest of the proposed class.

Although district courts enjoy discretion to certify a class, class certification is only appropriate if the Court is satisfied, after conducting a rigorous analysis, that the party seeking certification has met its burden of demonstrating that (1) the proposed class meets all four prerequisites of a class action laid out in Rule 23(a), and (2) that the action is maintainable under one of the three categories set forth in Rule 23(b). *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012)*; In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012); *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).

After satisfying the prerequisites of Rule 23(a), the Plaintiff must show that the case can proceed as a class action under subpart (1), (2), or (3) of Rule 23(b). In the present case, the Plaintiffs seek certification under Rule 23(a), Rule 23(b)(1), Rule 23 (b)(2) or, alternatively, Rule 23(b)(3).

The Court's decision to grant Class certification lies within its sound discretion. Given that Class certification is always subject to later modification, "the court should err in favor of, and not against, the maintenance of the class action." Furthermore, "the interests of justice require that in a doubtful case … any error, if there is to be one, should be committed in favor of allowing a class action." In deciding a motion for Class certification, the Court should avoid pre-judging the merits and assume the truth of the substantive allegations of the Plaintiffs' Complaint.

"The party seeking certification bears the burden of proof" that the proposed class meets all requirements. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). To meet this burden, the proponent must show that the class satisfies all the requirements in fact; this is not a "mere pleading standard." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551(2011). Courts have adopted a liberal approach to class certification by requiring that "[i]f a Court errs, the Court should err in favor of the maintenance of a class action." Rubenstein v. Collins, 162 F.R.D. 534, 536 (S.D.

4

Tex. 1995 (Hoyt, J.). Thus, "the question is not whether the Plaintiff or Plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." In re Enron Corp. Securities Derivative "ERISA" Litigation, 228 F.R.D. 541, 555 (S.D. Tx. 2005) (quoting Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 178 (1974)).

Additionally, the Court must consider general prerequisites to certification such as whether the proposed class definitions are appropriate, whether the named representatives are members of the class and whether they have standing. *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 1896 (1977) ("[A] class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members."); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004). A precise class definition is necessary to identify properly 'those entitled to relief, those bound by the judgment, and those entitled to notice'") (citing 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[6], at 23–62.2 (3d ed. 2003); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) ("Standing is an inherent prerequisite to the class certification inquiry.").

## B. Rule 23(a) - Class Action Prerequisites

### i. Numerosity

Certification is only appropriate where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "A Plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). Nevertheless, there is no magic number at which the numerosity requirement is satisfied. *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013); 7A . *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (identifying cases in which numerosity was satisfied with as few as 25 putative class members, but not satisfied with as many as 350). The critical inquiry is not, therefore, whether there are a sufficient number of class members, but whether joinder is impracticable. To make this determination, courts turn to several factors, including "size of the class,

5

ease of identifying members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). at 740 (finding that district court erred in failing to consider how a trial on the merits would be conducted). This necessitates an "understanding of the relevant claims, defenses, facts, and substantive law presented in the case," and "often entail[s] some overlap with the merits of the Plaintiffs' underlying claim." *Wal–Mart Stores,* 131 S. Ct. at 2551-2552. Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage" and merits questions may be considered only to the extent that they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–195 (2013).

*ii. Commonality*

There must also be "questions of law or fact common to the class". FED. R. CIV. P. 23(a)(2). To meet this burden, the class proponent must demonstrate that "all [of the class members'] claims can productively be litigated at once." M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 840 (5th Cir. 2012).It "does not require complete identity of legal claims among the class members"—only that they have "at least one issue whose resolution will affect all or a significant number of the putative class members." Stewart v. Winter, 669 F.2d 328, 335 (5th Cir. 1982). Dissimilarities among class members should be considered to determine whether a common question is truly presented. Wal-Mart Stores, 131 S. Ct. at 2556. Nevertheless, the threshold for commonality is not high. Jenkins v. Raymark Industries, 782 F.2d 468, 472 (5th Cir. 1986). Even a single common question of law or fact can suffice. Wal-Mart Stores, 131 S. Ct. at 2256.

*iii. Typicality*

"[T]he claims or defenses of the representative parties [must also be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The test for typicality is not extremely rigorous and does not require that the representative's claims be identical to those of all members of the class. *See*

*Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993); *Philips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981). The typicality inquiry rests "less on the relative strengths of the named and unnamed Plaintiffs' cases than on the similarity of legal and remedial theories behind their claims." *Jenkins*, 782 F.2d at 472. "Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." James v. City of Dallas, Tex., 254 F.3d 551, 571 (5th Cir. 2001) (citing 5 JAMES WM. MOORE ET AL.,MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000).

*iv. Adequacy*

Finally, to comply with the requirements of Rule 23(a), the movant must show that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To meet this requirement, the Plaintiffs must be able to show that the "class representatives…possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." Berger v. Compaq Computer Corp., 257 F.3d 475, 482-83 (5th Cir. 2001). Additionally, the standard for adequacy requires an "inquiry into [1] the zeal and competence of the representative[s]' counsel... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation to protect the interests of absentees" and, [3] the existence of any conflicts of interests between the named Plaintiffs and the class they seek to represent. Feder v. Elec. Data Sys. Corp., 429 F3d 125, 130 (5th Cir 2005). .Differences between the named Plaintiffs and class members do not render the named Plaintiff inadequate unless those differences create actual and material conflicts of interest. See Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 626 (5th Cir. 1999).

**C. Rule 23(b)(1) & (2)**

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). An action can qualify and be certified under more than one of the Rule 23(b) scenarios. See, e.g., Mertz v. Harris, 497 F. Supp. 1134, 1139 (S.D. Tex. 1980) (certifying class under Rules 23(b)(1) & (2)); Dale Electronics, Inc. v. R.C.L. Electronics, Inc., 53 F.R.D. 531, 536-37 (D.N.H. 1971) (class certified under Rules 23(b)(1) & (2)).

A class action may be certified under Rule 23(b)(1) if the "prosecution of separate actions by or against individual members of the class would create risk of" either:

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

> (B) adjudications with respect to individual members of the class which would as a practical be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

The scenarios described in paragraphs (1)(A) & (B) Federal Rule of Civil Procedure 23(b)(1) are really two sides of the same coin; paragraph (A) views the class determination from the perspective of the party opposing the class, while paragraph (B) approaches the issue from the side of the proposed class members.  The provision of (b)(1)(A) recognizes that defendants have an interest in avoidance of a multiplicity of actions by individuals that may result in inconsistent outcomes requiring incompatible standards of conduct for the defendants. Id. The language of (b)(1)(B), on the other hand, addresses the concern of members of the Plaintiff class that litigation of the named Plaintiffs' cast may impair or impede the ability to protect the interests of the remaining members of the class. Cases, for example, where there is a limited fund from which a large class of Plaintiffs seek to recover are frequently certified as a class action under Rule 23(b)(1)(B). See, e.g., In re Jackson Lockdown/MCO Cases, 107 F.R.D. 703, 711-12 (E.D. Mich. 1985) ("most common use of (b)(1)(B) class actions is in limited fund cases").

8

A class action certified under Rule 23(b)(2) may include claims for monetary relief. See, e.g., Robertson v. National Basketball Ass'n, 556 F.2d 682, 685 (2nd Cir. 1977); In re Jackson Lockdown/MCD Cases, 107 F.R.D. 703, 710-11 (E.D. Mich. 1985); Edmonson v. Simon, 86 F.R.D. 375, 383 (N.D. Ill. 1980); Day v. NLO, 851 F. Supp. 869, 886-87 (S.D. Ohio 1994); 1 NEWBERG 4.14; WRIGHT & MILLER 1775. Rule 23(b)(2) permits class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

## D. Rule 23(b)(3)

### i. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This inquiry is far more demanding than the Rule 23(a)(2) commonality inquiry. *Funeral Consumers Alliance*, 695 F.3d at 348-49. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). The Court must "assess how the matter will be tried on the merits, which 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'" *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). (citing *O'Sullivan v. Countrywide Home Loans, Inc.,319 F3d 732, 738 (5th Cir 2003)..* Proponents of certification are not required to show that all issues are common to the class or even that there are more common issues than not; the inquiry is qualitative and pragmatic with an eye toward ascertaining the most pivotal issues. 2 NEWBERG ON CLASS ACTIONS § 4:51 (5th ed.).

Frequently, the courts encounter proposed classes with significant common issues, but which necessarily require individualized considerations on damages. The Fifth Circuit has held that

"differences among the members [of a class] as to the amount of damages incurred does not mean that a class action would be inappropriate." *Bell Atlantic Corp. V. AT&T Corp.*, 339 F.3d 294, 307 n. 17 (5th Cir. 2003). Class certification has been upheld where "virtually every issue prior to damages [was] a common issue...[and where e]very aspect of liability in the case" involved a common issue. *Bertulli*, 242 F.3d at 298. In such instances, the Court is permitted to certify a class as to certain issues only, or to bifurcate the trial. *See* FED. R. CIV. P. 23(c) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."); *Mullen*, 185 F.3d 620 (upholding certification with bifurcated trial plan with first phase to adjudicate common issues of liability in aggregate and with second phase to consist of mini-trials on causation, contributory negligence and damages).

*ii. Superiority*

Finally, before certifying a class, the Court must conclude that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). To accomplish this, the Court must compare and "assess the relative advantages of alternative procedures for handling the total controversy." *In re TWL Corp.*, 712 F.3d at 896 (quoting FED. R. CIV. P 23(b)(3) Advisory Committee's Note to 1966 Amendment). Superiority analysis is fact-specific and varies depending on the circumstances of each case. *Id.*; 7AA WRIGHT, MILLER, &KANE, FEDERAL PRACTICE &PROCEDURE § 1783, at 322 (3d ed. 2005).

Among the factors for the Court to consider are "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *Amchem Products, Inc.*, 521 U.S. at 615–616 ("Rule 23(b)(3) includes a non exhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria").

10

# IV.   ARGUMENT

## A.  The Prerequisites of Rule 23(a) Have Been Met

### i.    The Class is so Numerous that Individual Joinder is Impracticable because the Defendant Violated the Federally Protected Rights of approximately Millions

Rule 23(a)(1) requires that the Class be so numerous that individual joinder of all Plaintiffs is impracticable. The 5th Circuit has not established any rigid rules concerning the number of Plaintiffs necessary for there to constitute a "class" under Rule 23.[2] In determining whether the "numerosity" requirement is satisfied, the number of persons in a proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder is relevant.[3] It is important to note that impracticality does not mean impossibility, but only that the joinder of all members of the Class would be difficult or inconvenient.[4] While, as stated above, there is no numerical requirement for satisfying the numerosity requirement, forty Class members generally satisfies the numerosity requirement.[5]

In the present case, the precise number of Class members is not yet known as Plaintiffs are unaware of exactly how many individuals' personal information was contained within the database sold. However, the State of Texas about 9 million registered vehicles, while Florida has

---

[2] *Boyd v. Ozark Airlines, Inc.,* 568 F.2d 50, 54 (8th Cir. 1977); *Robinson v. Sears, Roebuck & Co.*, 111 F. Supp.2d 1101, 1120 (E.D. Ark. 2000).
[3] *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987).
[4] *Jackson v. Rapps*, 132 F.R.D. 226, 230 (W.D. Mo. 1990).
[5] *See, e.g., NEWBERG ON CLASS ACTIONS*, Third Ed., § 3.05 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable"); *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (classes with 39, 64 and 71 members probably sufficient); *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir. 1977), *quoting, Sagers v. Yellow Freight Sys., Inc.*, 529 F.2d 721 (5th Cir. 1976)) (finding a class of 110 is "clearly sufficient" under Rule 23(a)(1)). No. 4:05-cv-2394, 2007 WL 2159475, at *10 (E.D. Mo. July 26, 2007) (*citing NEWBERG ON CLASS ACTIONS*, § 3.5 at 247-8 (4th Ed.)).

8 million registered vehicles.[6] For purposes of their Motion for Class Certification, the proposed class contains a minimum of 17 million individuals.

Based on these numbers, it is undisputed that it would be impracticable to join the approximately millions of individuals whose highly restricted, DPPA protected personal information was unlawfully obtained, used, and/or disclosed by the Defendant, in violation of the DPPA. Therefore, class action status is appropriate in this case and the numerosity requirement is met.

### ii.    Questions of Law or Fact are Common to Members of the Class

Next, Rule 23(a)(2) requires the presence of questions of law or fact common to members of the Class. When common questions represent a significant aspect of a case and they can be resolved in a single action, the class action device is appropriate.[7] This does not mean that all Class members must be identically situated; individual differences as to the effect of Defendant's conduct, for example, will not defeat Class certification.[8] Further, factual differences are not fatal to the maintenance of the class action if common questions of law exist.[9] Only one single issue common to all Class members is necessary to satisfy "commonality" and, therefore, this requirement is easily met in most cases.[10]

Moreover, commonality is not required on every question raised in a class action. Rather, the commonality requirement is satisfied when a legal question linking the Class members is substantially related to the litigation.[11] Indeed, commonality does not require that all legal claims

---

[6] https://www.fhwa.dot.gov/policyinformation/statistics/2011/mv1.cfm

[7] *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1788 at 528.
[8] *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995).
[9] *Id.*
[10] *Id; see also, Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 10 (9th Cir. 1998).
[11] *See Deboer v. Mellon Mfg. Co*., 64 F.3d 1171, 1174 (8th Cir. 1995).

12

be identical, but instead requires that one or more significant questions of law or fact be common to the Class.[12]

In the present case, there is a well-defined community of interest and common questions of law and fact that predominates over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member.

1. The nature and extent of all statutory penalties or damages for which the Defendant is liable to the Plaintiffs and Class members; and

2. Whether punitive damages are appropriate.

The preliminary list of common questions of law and fact enumerated within this memorandum within section V, while not exhaustive, unquestionably satisfies the criteria of Rule 23(a)(2), as the answers to these fundamental questions are dependent upon a standard, unitary set of operative facts concerning Defendant's unlawful actions, which are central to the resolution of the claim of the representative Plaintiffs and each member of the proposed Class. These questions can be answered for the Class as a whole, clearly predominate in this litigation, and, therefore, this prerequisite has been satisfied.

### iii. Plaintiffs' Claims are Typical of Those of the Class Because Both Plaintiffs' And The Class' Claims Arise From the Same Course of Conduct and are Based on the Same Legal Theories

Rule 23(a)(3) requires that the claims of the representative Plaintiff be typical of those of the Class. Typicality, under Rule 23(a)(3), means that there are "other members of the class who have the same or similar grievances as the Plaintiff."[13] The burden is "fairly easily met so long as

---

[12] *Morgan v. United Parcel Service,* 169 F.R.D. 349, 355 (E.D. Mo. 1996).
[13] *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir. 1977).

other class members have claims similar to the named Plaintiff."[14] A representative Plaintiff's

claim is typical of those of the putative class if it complains of the same wrongful conduct.[15]

Factual variations in the individual claims will not normally preclude class certification if the

claim arises from the same event or course of conduct as the class claims, and gives rise to the

same legal or remedial theory.[16]

     In the present case, Plaintiffs' claims are identical to those of the proposed class and

Defendant engaged in the same conduct as to all class members. More specifically, Defendant

obtained each Plaintiffs' and each Class members' DPPA protected personal information.

Defendant CIS Entities did so by representing that it had a DPPA permissible purpose to obtain

the personal information for each Plaintiff and each Class member. Plaintiffs' and the Class'

claims, in addition to their actual damages, consist of the $2,500.00 liquidated damages provided

for by 18 U.S.C. § 2724(b)(1).

     Therefore, Plaintiffs' claims are typical because they arise from the same events, practices,

and/or course of conduct that gives rise to the claims of the other class members, and both

Plaintiffs' and the Class' claims are based on the same legal theories.

### iv.   The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class

     The adequacy requirement of Rule 23(a)(4) is met by fulfilling two conditions: (1) the

Class representative's interest is coextensive with and not antagonistic to those of the unnamed

class members; and (2) Plaintiffs' counsel must be fully competent to prosecute this action as a

class action.[17] The requirement of adequate representation tends to merge with the commonality

---

[14] *DeBoer v. Mellon Mortgage Co.,* 64 F.3d at 1174.
[15] Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.13, at 167 (2d ed. 1985)
[16] *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (*citing Donaldson,* 554 F.2d at 831).

[17] *Lindquist v. Brown*, 633 F. Supp. 846, 859 (W.D. Mo. 1986).

14

and typicality prerequisites, which serve as guideposts for determining whether the maintenance of a class action is economical and whether the representative party's claims and the Class' claims are so interrelated that the interest of the Class members will be fairly and adequately protected in their absence.[18]

In order for differences in views among the representatives and Class members to constitute a conflict sufficient to defeat Class certification, there must appear to be a real probability of a conflict which goes to the very heart of the litigation.[19] In the present case, each of the Plaintiffs' claims are identical to those of the Class members, and they seek no preferential treatment. Each of the Plaintiffs seek to demonstrate that Defendant's conduct violated federal law. There is no conflict between the proposed Class representatives and other Class members.

Additionally, Plaintiffs' Counsel in the case at bar are experienced and competent to handle complex class action litigation. "In the absence of proof to the contrary, courts presume that Class counsel is competent and sufficiently experienced to vigorously prosecute the class action."[20] Plaintiffs' Counsel have successfully litigated many class action cases, mass tort lawsuits and have represented several hundreds of parties simultaneously before Multi-District and other coordinated proceedings concerning highly complex issues of law in state and federal court venues throughout the United States. Rule 23(g) requires that courts consider the following four factors when appointing Class counsel: (1) whether counsel has investigated the Class claims; (2) whether counsel is experienced in handling class actions and complex litigation; (3) whether counsel is knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate resources to representing the Class.[21]

---

[18] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).
[19] *In re Tetracycline Cases*, 107 F.R.D. 719, 730 (W.D. Mo. 1985).

[20] *Morgan v. UPS*, 169 F.R.D. at 357.
[21] Fed.R.Civ.P. 23(g)(1)(C)(1).

As discussed *infra*, Plaintiffs' Counsel are well qualified and easily meet the standards of Rule 23(g). Plaintiffs' Counsel have conducted an extensive pre-litigation investigation of the Class claims, including obtaining and reviewing documents and extensive, time consuming pre-suit investigation into the Defendant's complained-of conduct and its complex series of relations with State Motor Vehicle Departments. Finally, Plaintiffs' Counsel have committed significant resources to representing the Class, and are committed to continuing to do so in the future, and have a demonstrated ability to represent Classes throughout complex litigation. Thus, the Plaintiffs request this Court to appoint the undersigned Plaintiffs' Counsel as Class Counsel, with Joseph H. Malley as Lead Counsel.

Accordingly, this and the other prerequisites of Rule 23(a) have been satisfied.

## B.  Plaintiffs' Claims Satisfy the Requirements of Rule 23(b).

A proposed class that meets the requirements of Rule 23(a) must also fulfill the requirements of 23(b)(1), 23(b)(2), or 23(b)(3). If the proposed Class satisfies multiple sections of Rule 23(b), it should be approved under Rule 23(b)(1) or (b)(2), rather than (b)(3).[22] Here, Plaintiffs assert that this Class is certifiable under 23(b)(1), (b)(2), or, alternatively, (b)(3).

### i.   The Class Qualifies Under Rule 23(b)(1).

Certification under Rule 23(b)(1) is appropriate in two situations. To proceed under Rule 23(b)(1)(A) the court must find that individual lawsuits would create the possibility of establishing "incompatible standards of conduct" for the party opposing the class.[23] Subdivision (B) of Rule 23(b)(1) requires the finding that individual lawsuits might as a practical matter

---

[22] *Atwood v. Burlington Industries Equity, Inc.*, 164 F.R.D. 177, 178 (M.D. N.C. 1985); *McGlothlin v. Connors*, 142 F.R.D. 626, 640 (W.D. Va. 1992).
[23] *Reynolds v. National Football League*, 584 F.2d 280, 283 (8th Cir. 1978).

dispose of the interests of other class members or substantially impair or impede their ability to protect their interests.[24] Both subsections are applicable to the facts in the case at bar.

In the present case, individual lawsuits from millions of Plaintiffs for individual claims of statutory damages would pose the risk that, for example, in one suit a court would conclude that the Defendant obtained, used, and/or disclosed the Plaintiffs' personal information in violation of the DPPA, while in another suit a court could find that the Defendant acted in accordance with the DPPA. If this were to occur, in the future, the Defendant could not simultaneously adhere to the standards of conduct established by the two courts. As such, adjudication of the dispute as a class action, by contrast, would provide a uniform direction for the Defendant.[25]

Moreover, if this lawsuit were to proceed only on behalf of the named Plaintiffs and not on behalf of the proposed Class, the final adjudication of this lawsuit could possibly greatly impair the proposed Class' DPPA rights without having been given the opportunity to participate in this lawsuit.

For these reasons, this case should be certified as a class action pursuant to Rule 23(b)(1) or Rule 23(b)(2).

### ii.   The Class Also Qualifies Under Rule 23(b)(2).

As discussed *supra*, Plaintiffs have alleged Defendant violated the DPPA rights of the entire class, at the same time, by unlawfully obtaining the entire database of motor vehicle records without a DPPA permissible purpose for that information. Plaintiffs further alleged that Defendant, since unlawfully obtaining the Class' DPPA protected information, unlawfully used

---

[24] *Id.*

[25] *See Kohl v. Ass'n of Trial Lawyers of America*, 183 F.R.D. 475, 485-86 (D. Md. 1998) ("The adjudication of this case as a class action will result in one interpretation of the DPPA, and provide a uniform formula in which the damages will be calculated"); *Capital Cities/ABC, Inc. v. Ratcliff*, No. 94-cv-2448, 1996 WL 507285, at *4 (D.Kan. August 13, 1996) (finding class certified under 23(b)(1)(A) because multiple suits pose risk of inconsistent determinations whether newspaper carriers were independent contractors and thus not entitled to benefits under ERISA); *Westman v. Textron, Inc.*, 151 F.R.D. 229, 231 (D. Conn. 1993).

and disclosed this information in violation of the DPPA. Presently, Defendant continues to unlawfully obtain (through periodic updates), use, and disclose the Class' DPPA protected information.

In this Lawsuit, Plaintiffs seek a final order that prevents Defendant from continuing to violate the Class' DPPA privacy rights by enjoining Defendant from obtaining, using, and/or disclosing the Class' DPPA protected information unless done for a purpose contained with 18 U.S.C. § 2721(b). Therefore, the proposed Class qualifies for certification under Rule 23(b)(2) because each of the Defendants "has acted … on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole."[26]

Moreover, Plaintiffs submit that courts commonly find that certification of a class under Rule 23(b)(2) is appropriate where the Plaintiffs' and Class' claims primarily involve the same infringement by the defendants of a "right" granted to those Plaintiffs and that class by law.[27] That is exactly the case here. The obvious injury and claim of the Plaintiffs and that of the members of the Class is the fact that the Defendant has violated the "rights" and "interests" Congress granted each of them by enacting the DPPA to provide a framework of protection for each of their highly restricted and protected personal information that Defendant unlawfully obtained, used, and/or disclosed in direct violation of the DPPA. Thus, it is appropriate for this

---

[26] Fed.R.Civ.P. 23(b)(2).

[27] *See e.g. Amchem Products, Inc. v. Windsor*, 521 U.S. at 614; *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 625-26 (E.D. Pa. 1976); *see also, Marshall v. Kirkland*, 602 F.2d 1282, 1295 (8th Cir. 1979) ("Though Rule 23(b)(2) relates to class claims on which declaratory and injunctive relief is sought, this Court has observed in conformity with the majority of federal courts, that the fact [that] pecuniary relief in the form of back pay is "sought incidental to injunctive relief will not preclude certification under Rule 23(b)(2).") (*quoting, Sperry Rand Corp. v. Larson*, 554 F.2d 868, 875 (8th Cir. 1977); *Alliance to End Repression v.Rochford*, 565 F.2d 975, 979 (7th Cir. 1977), *citing* to Advisory Committee Notes to the 1966 Amendments to Rule 23).

Court to provide final injunctive relief and/or declaratory relief with respect to the Class as a whole.

In the instant action, Plaintiffs also seek, *inter alia*, liquidated damages in the amount of $2,500.00 for each violation of the DPPA. This claim for monetary damages does not prevent this Class from being certified under Rule 23(b)(2) because the requested final relief does not relate "exclusively or predominately to money damages."[28] Plaintiffs' claim for final relief clearly is not exclusive to money damages and it is not predominately about money damages because it is not "superior [in] strength, influence, or authority" to Plaintiffs' request for injunctive relief.[29] Here, Plaintiffs request for injunctive relief and monetary damages are unquestionably on equal footing. Moreover, statutory damages, such as those requested by Plaintiffs, "may be included in Rule 23(b)(2) classes as incidental to injunctive relief.[30]

Therefore, the requirements of Rule 23(b)(2) are met.

### iii.  Alternatively, This Case Satisfies the Standards for Class Certification Under Rule 23(b)(3)

If the Court declines to certify the Class pursuant to Rule 23(b)(1) or (b)(2), it may certify the Class under Rule 23(b)(3) because: (1) common questions predominate over individual questions, and (2) the class action device is superior to other forms of litigation for the fair and efficient adjudication of this controversy.[31]

### a.  Here, Common Questions Clearly Predominate Over Individual Questions

---

[28] *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 616 (9th Cir. 2010) (*quoting*, Advisory Committee Notes to the 1966 Amendments to Rule 23); *see also*, *Sullivan v. DB Investments, Inc.*, 613 F.3d 134, 156 (3rd Cir. 2010) ("It has no application 'to cases in which the appropriate final relief relates exclusively or predominately to money damages.'") (quoting, *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3rd Cir. 2006)).
[29] *Id.* (quoting *Merriam-Webster's Collegiate Dictionary* 978 (11th ed. 2004).
[30] *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 223089, at *3 (S.D. Fl. May 14, 2007).
[31] Fed.R.Civ.P. 23(b)(3); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3rd Cir. 1977).

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by joint representation.[32] The core of the predominance requirement is whether the defendant's liability to all Plaintiffs may be established with common evidence.[33] "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question."[34] "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."[35]

As demonstrated throughout this memorandum, every factual and legal issue associated with proof of Defendant's liabilities and, as well, every factual and legal issue associated with injunctive relief will be common to all Class members, can be proven with the same evidence. Defendant purchased each class members' DPPA protected information. Defendant was able to do so because it made one representation to the State Motor Vehicle Departments that it had a DPPA permissible purpose for each piece of information contained in the database of motor vehicle records, while Defendant did not in fact have a permissible purpose. This common evidence establishes Defendant's liability as to all members of the Class.

### b.  DPPA Lawsuits Are Clearly More Fairly and Efficiently Litigated Via the Class Action Device

Rule 23(b)(3) identifies four factors relevant in examining whether the class action device is the "superior" form of litigation: (1) the interest of members of the Class in individually controlling the prosecution … of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by … members of the Class; (3) the desirability

---

[32] *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623.
[33] *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010) (citing *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).
[34] *Blades v. Monsanto Co.*, 400 F.3d at 566.
[35] *Id.*

or undesirability of concentrating the litigation of the claims in the particular forum; and, (4) the difficulties likely to be encountered in the management of the Class.[36]

As for this court utilizing the class action device here because it is "superior" as a means of resolving this dispute, Plaintiffs submit that certifying this case as a class action would be the most fair and efficient procedure for adjudicating this matter, as a review of the aforementioned factors of Rule 23(b)(3) clearly indicate. To the best of each of the Plaintiffs' and their Counsel's knowledge, no Class member other than the three named Plaintiffs herein have filed a lawsuit against the Defendant arising out of the events that give rise to the claims in this case.

Without question, all claims for the Defendant's violations of the DPPA pertaining to the putative class should be tried in this court. Concentration in one forum is desirable to avoid multiple trials of the common issues. The final (b)(3) factor is "the difficulties likely to be encountered in the management of a class action." Any difficulties with managing a class action pale if individual suits are filed. The common questions of law and fact set forth above predominate over any questions affecting individual members.

As demonstrated throughout this memorandum, there are a host of factual and legal questions common to the Class, any one of which would be sufficient to meet the "predominance" requirement. If Plaintiffs and every class member were to bring thousands of individual actions, each would rely upon the identical conduct by the Defendant in order to establish their respective cases. Here, there is no question Plaintiffs seek to remedy common legal grievances on behalf of the Class. These common legal grievances are based on uniform conduct by the Defendant. Thus, the predominance element is easily satisfied and the proposed

---

[36] Fed.R.Civ.P. 23(b)(3).

Class should be approved pursuant to Fed. R. Civ. P. 23(b)(3), if it is not approved pursuant to one of the other subsections of Rule 23(b).

## V.     SPECIFIC RESPONSE TO LR 23.2 INQUIRY

Plaintiffs respond directly to the specific questions within LR 23.2 to satisfy such requirement, incorporating by reference and re-arguing all paragraphs previously noted herein, and provides the following:

**a. Appropriate Sections of Fed. R. Civ. P. 23 under which the suit is properly maintainable as a class action:**

Plaintiffs brought this consumer Class Action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), on behalf of themselves and a proposed class of similarly situated Individuals, (hereinafter referred to as "Class Members").

**b. Specific factual allegations concerning the alleged Class:**

1. **Approximate number of Class Members:** The precise number of Class Members is not yet known but estimates are that The Class consists of millions, if not tens of millions of individuals. Plaintiffs' Counsel has obtained documentation that Defendant CIS Entities obtained the Texas and Florida Motor Vehicle Registration Databases. Reportedly these databases are in the millions.

2. **Definition of the Class and Subclasses:** Plaintiffs seek certification of the following classes (collectively, the "Classes"):

   (a) NATIONWIDE CLASS: All persons in the United States who, on or after, four (4) years prior to the date of this filed complaint, through the final disposition of this or any related actions (the "Class Period"), had Defendant Elizabeth Blank, KMB Statistics, LLC, Data Solutions of America, or Compact Information Systems, obtain directly or indirectly, their motor vehicle records from their State Department of Motor Vehicles, to use, re-disclose, and resell, for purposes that included direct marketing and solicitation, without express consent. Some persons within the NATIONWIDE CLASS are also within the ENDURANCE WARRANTY SERVICES SUBCLASS and TEXAS SUBCLASS;

   (b) ENDURANCE WARRANTY SERVICES SUBCLASS: All persons who, on or after, four (4) years prior to the date of this filed complaint, through the final deposition of this or any related actions (the "Class Period") had Endurance Warranty Services, obtain directly or indirectly, their motor vehicle records from Defendant Elizabeth Blank, KMB Statistics, LLC, Data Solutions of America, or Compact Information Systems, to use, re-disclose, and resell, for purposes that

22

included direct marketing and solicitation, without express consent. All persons within the ENDURANCE WARRANTY SUBCLASS are also within the NATIONWIDE CLASS and some persons are within the TEXAS SUBCLASS;

(c) TEXAS SUBCLASS: All persons in Texas who, on or after, four (4) years prior to the date of this filed complaint, through the final disposition of this or any related actions (the "Class Period"), had Defendant Elizabeth Blank, KMB Statistics, LLC, Data Solutions of America, Compact Information Systems, or Endurance Warranty Services, obtain directly or indirectly, their motor vehicle records from the Texas Department of Motor Vehicles, to use, re-disclose, and resell, for purposes that included direct marketing and solicitation, without express consent. Some persons within the NATIONWIDE CLASS, ENDURANCE WARRANTY SERVICES SUBCLASS are also within the TEXAS SUBCLASS.

Excluded from the class are the Defendants, its employees, officers, directors, agent, legal representatives, heirs, assigns, successors, individual or corporate entities acting within a partnership, joint venture, trust, association, union, subsidiaries, whether wholly or partially owned, divisions, whether incorporated or not, affiliates, branches, joint ventures, franchises, operations under assumed names, websites, and entities over which Defendants' exercises supervision or control, or group of individuals associated in fact, although not a legal entity, or other legal entity, in addition to Plaintiffs' legal counsel, employees, and their immediate family, the judicial officers and their immediate family, and associated court staff assigned to this case, and all persons within the third degree of consanguinity, to any such persons.

3. **Distinguishing and common characteristics of Class Members, noting geography, time, and common financial incentives:** All Class Members' claims are common. Each registered a motor vehicle with their State Motor Vehicle Department and had Defendant's access such for direct marketing and solicitation without express consent. The only distinguishing characteristics of Class Members is merely geographical, Class Members reside in different states. The geographical scope of the Class Members are limited to states in which Defendants obtained their State Motor Vehicle databases and used such for Direct Marketing and Solicitation. Temporally, the Class for the Class Members begins four (4) years prior to the date of this action, through the final disposition of this action. The common financial incentive is that each Class Member has a right to claim the D.P.P.A. statutory violation of $2,500.00.

4. **Questions of law and fact that are common to the Class:** The questions of law and fact common to Plaintiffs and the Class Members, and those questions predominate over any questions that may affect individual Class Members include, but are not limited to the following:

Whether Defendants' obtained, used, re-disclosed Plaintiffs' and Putative Class Members' Motor Vehicle records for purposes which vilated the D.P.P.A.

5. **Allegations concerning the findings required by Fed. R. Civ. P (b)(3):**
Defendants obtained, used, and/or disclosed the DPPA protected personal information of each Plaintiff and putative Class Member in identical fashion; therefore, common questions of law and fact predominate over individual questions. Moreover, given the size of the proposed Class, the utilization of the class action device is superior to other available methods of litigation, and, as such represents the most for the fair and efficient mode of adjudicating this controversy.

c. **Basis of the named Plaintiffs' claim as adequate representative of the class, including financial responsibility to fund the action:**

Each of the three (3) named Plaintiffs in this action are registered drivers in their respective states that had Defendant CIS Entities obtain their motor vehicle information and then had CIS Affiliates send Direct Marketing letters, without their express consent. Each Plaintiff suffered harm. Plaintiffs financial responsibility shall include their time and expense to assist Plaintiffs' Counsel. Plaintiffs' Counsel has agreed to initially incur any financial responsibility involved in this action, and to request reimbursement of reasonable costs only if recovery is permitted.

d. **The basis for determining any required jurisdictional amount:**

Pursuant to 28 U.S.C. § 1332, amount in controversy, the basis for determining any required jurisdictional amount related to the amount of known registered drivers in Texas and Florida, roughly 17 million individuals, and Federal Statutory award of $2,500.00 each, or roughly 42 million dollars.

e. **Type and estimated expense of notice to be given to class members and the sources of funds from which notice costs will be paid:**

Electronic publication on websites Class Members frequent, notice by publication, or a website dedicated to this class action. As noted, Plaintiffs' Counsel shall incur such costs.

f. **Discovery necessary for a class certification hearing and estimated time necessary for such discovery:**

Initial interrogatories and requests to produce, pursuant to F.R.C.P. 33 and 34. Deposition of all parties, experts, and State of Texas Motor Vehicle personnel. Estimated time necessary: six months.

g. **Arrangements for payment of Plaintiffs' attorney fees:**

Plaintiffs' have retained counsel with substantial experience in prosecuting complex litigation and class actions involving unlawful commercial practices. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class Members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest that might cause them not to

24

vigorously pursue this action. Plaintiffs have engaged Plaintiffs' Counsel in a contingency contract.

## VI.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff respectfully requests the Court to grant the Motion for Class Certification pursuant to Rule 23(a), Rule 23(b)(1), (2), and (3), adopting the Class Certification that the Plaintiffs propose.

Respectfully submitted,

<u>/s/ Joseph H. Malley</u>
Law Offices of Joseph H. Malley, P.C.
1045 N. Zang Blvd
Dallas, Texas 75208
214-943-6100
214-943-6170
malleylaw@gmail.com

Attorney for Plaintiffs

25

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1(b), I hereby certify that due to time constraints required by LR 23.2, I was unable to have a conference with Counsel and Defendants.

Respectfully submitted,

/s/ Joseph H. Malley
Law Offices of Joseph H. Malley, P.C.
1045 N. Zang Blvd
Dallas, Texas 75208
214-943-6100
214-943-6170
malleylaw@gmail.com

Attorney for Plaintiffs

26

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on March 31, 2014, I electronically filed the Plaintiffs'
Memorandum of Law in Support of Plaintiffs' Motion for Class Certification with the Clerk of
the Court using ECF system which will send notification of such filing to the ECF Participants.


        Respectfully submitted,

        <u>/s/ Joseph H. Malley</u>
        Law Offices of Joseph H. Malley, P.C.
        1045 N. Zang Blvd
        Dallas, Texas 75208
        214-943-6100
        214-943-6170
        malleylaw@gmail.com

        Attorney for Plaintiffs