**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** *Individually, and on behalf of a themselves and all others similarly situated individuals*, **TOBY CROSS,** *Individually and on behalf of a themselves and all others similarly situated individuals*, **and ARTHUR LOPEZ,** <br>         **Plaintiffs,** <br><br>v. <br><br>**COMPACT INFORMATION SYSTEMS, INC.,** *a Washington Corporation*, **DATA SOLUTIONS, OF AMERICA, INC.,** *a Florida Corporation*, **ELIZABETH M. BLANK,** *a Florida Individual*, **ENDURANCE WARRANTY SERVICES,** *a Illinois Corporation*, **KMB STATISTICS, LLC,** *a Florida Corporation*, **and DOE INDIVIDUALS AND CORPORATIONS 1-100 INCLUSIVE,** <br>         **Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 3:13-CV-5013-M** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated April 15, 2014, this case was referred for pretrial management.  Before the Court is *Defendant Endurance Warranty Services, L.L.C.'s Motion to Dismiss For Lack of Personal Jurisdiction and for Failure to State a Claim*, filed February 20, 2014 (doc. 10).  Based on the relevant filings, evidence, and applicable law, the motion to dismiss for lack of personal jurisdiction should be **GRANTED**.

**I.     BACKGROUND**

On December 27, 2013, Jane Doe and Toby Cross, on behalf of themselves and a proposed class of similarly-situated individuals (Proposed Class Members), filed a class action complaint

against six defendants, including Endurance Warranty Services, L.L.C. (Defendant),[1] and an unspecified number of unknown individuals and/or entities, alleging violations of their privacy and security rights under the Federal Driver's Privacy Protection Act and state driver privacy protection acts. (doc. 1.)[2] On December 30, 2013, the plaintiffs filed a second amended class action complaint adding Arthur Lopez as a plaintiff,[3] and asserting claims for violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, violations of the State Motor Vehicle Records Acts, breach of bailment, conversion, "invasion of privacy and seclusion and public discovery of private facts," negligence, trespass to personal property/chattels, and unjust enrichment. (doc. 5 at 1.) The claims against Defendant arise from its alleged use, re-disclosure, resale, and purchase of personal identifying information derived from the plaintiffs' motor vehicle records in Texas and Florida. (*Id*. at 6-7.)

Plaintiff Jane Doe is a resident of Manatee County, Florida[4]; plaintiff Toby Cross is a resident of Anderson County, Texas; and plaintiff Arthur Lopez is a resident of Dallas County, Texas. (*Id*.) Defendant is an Illinois limited liability company with its principal place of business in Northbrook, Illinois. (*Id*. at 8; doc. 11 at 4.) According to the uncontroverted declaration of its Vice President, Paul Chernawsky (the Chernawsky Declaration), Defendant is engaged in the business of selling automobile service contracts from its Northbrook office via direct mail

---

[1]The other named defendants are Compact Information Systems, Inc., Data Solutions of America, Inc., Elizabeth M. Blank, and KMB Statistics. They are all residents of the State of Florida, except for Compact Information Systems, Inc., which is a resident of the State of Washington.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3]The "second amended class action complaint" is actually a first amended complaint.

[4]Defendant is alleged to have used, re-disclosed, resold, and purchased Jane Doe's motor vehicle records only in Florida.

solicitation to consumers throughout the country. (doc. 11 at 4; *see* doc. 5 at 25.) It has only been in business at its offices in Northbrook and Chicago, and all of its employees work at those offices and have never traveled to Texas to do business for Defendant. (doc. 11 at 4.) It has never been licensed to do business in Texas, and it has never maintained a registered agent in Texas. (*Id*.) It owns no property, has no bank accounts, and has never applied for a loan or acted as a guarantor in Texas. (*Id*. at 5.) Defendant does not pay taxes or maintain business records in Texas, and it has never performed administrative functions or held a company meeting in Texas. (*Id*. at 4-5.) All of its members and managers are residents of Illinois, and they were never physically present in Texas relating to any matter alleged in this case. (*Id.* at 5.) Finally, Defendant has never maintained a telephone, fax number, office or address in Texas. (*Id*.)

Defendant is the domain registrant for two websites: http://www.autoservicewarranty.com and http://www.endurancewarranty.com,, both of which describe it as a nationally recognized automotive service contract provider who provides automotive service contracts to consumers directly. (doc. 5 at 26.)

At some point, Defendant sent the plaintiffs Cross and Lopez (the Texas Plaintiffs) and Plaintiff Doe a "marketing and solicitation" letter. (*Id*. at 6-7.) "Marketing and solicitation" correspondence from Defendant was also received by "State Officials" from Defendant's Northbrook office. (*Id*. at 36.) The "marketing and solicitation" correspondence sent included the address of Defendant's Northbrook address as well as an 800-number. (*Id*. at 26.)

The second amended complaint alleges that Defendant "used, re-disclosed, resold, and purchased" the Texas Plaintiffs' motor vehicle records within Texas, "which resulted in a solicitation and marketing letter" being sent to those Plaintiffs without their express consent. (*Id*.

at 6-7.) Plaintiffs allege that Defendant purchased these motor vehicle records from other defendants. (*See* doc. 5 at 12, 26.) The second amended complaint also alleges that Defendant has done business in Texas during the class period and generally alleges that all defendants "conducted activity" within Texas during the class period. (*Id*. at 8, 10.) Plaintiffs seek an order certifying that the case be maintained as a class action under FED. R. CIV. P. 23(a), (B)(1)(A), (b)(2), and (b)(3), declarations that the defendants' actions resulted in the causes of actions asserted in the second amended complaint, preliminary and permanent injunctive relief, attorneys' fees and costs, damages, and pre-and post-judgment interest. (*Id*. at 95-98.)

On March 24, 2014, Defendant moved to dismiss Plaintiffs' second amended complaint for lack of personal jurisdiction and for failure to state a claim. With a timely-filed response (doc. 19) and a timely-filed reply (doc. 20), the motions to dismiss are now ripe for consideration.

## II.  12(b)(2) MOTION TO DISMISS

**A.    Legal Standard**

Defendant moves to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction. (*See* doc. 10 at 2.) The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent as a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1). Because the Texas long-arm

statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq*. (West 2012). "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3091 (2011). General jurisdiction exists where the nonresident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. Ltd.*, 205 F.3d at 215 (quoting *Burger King Corp.*, 471 U.S. at 472) (internal quotation marks

omitted). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).

Where, as here, the court does not conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing in support of jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The Court must accept that party's uncontroverted factual allegations in the complaint as true and resolve in its favor all factual disputes contained in the parties' affidavits. *Alpine View Co., Ltd.*, 205 F.3d at 215; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). It is not required "to credit conclusory allegations, even if uncontroverted," however. *Panda Brandywine Corp.*, 253 F.3d at 869. The Court therefore only considers the plaintiff s' uncontroverted, nonconclusory allegations in the complaint and any evidence they provide to counter Defendant's evidence.

**B.      Minimum Contacts**

Defendant argues that it has insufficient contacts with the State of Texas to support personal jurisdiction. (doc. 10 at 2.) Specifically, it argues that this Court cannot exercise specific jurisdiction over it because it has not purposefully availed itself of the privileges and benefits of the State of Texas. (*Id.*) It is also not subject to the general jurisdiction of courts in Texas because it has no contacts with the State of Texas that are sufficiently "continuous and systematic" to justify the exercise of general jurisdiction. (*Id*. at 3.) Finally, Defendant argues that maintenance of this suit would offend traditional notions of fair play and substantial justice. (*Id*. at 2.)

Plaintiffs respond that Defendant operates with its subsidiary Endurance Dealers Services L.L.C. (Endurance Dealers), which has the same owners and management, and that the two entities

collectively have engaged in activities that are within the jurisdiction of this Court.[5] (doc. 19 at 7.) They list several activities that purportedly subject Defendant and Endurance Dealers to this Court's jurisdiction, most of which appear to be attributed solely to Endurance Dealers.[6] The activities include the following: (i) registering an L.L.C.; (ii) obtaining licensing in Texas as a service contract provider; (iii) maintaining a registered agent in Texas; (iv) being required to pay taxes in Texas; (v) conducting direct marketing which was directed to Texas residents; and (vi) maintaining websites that were not passive and which were directed to Texas residents. (doc. 9 at 7-8.) However, they make no allegations in the second amended complaint and provide no evidence regarding Endurance Dealers or its contacts with Texas.[7] *See Panda Brandywine Corp.*, 253 F.3d at 868 (finding court must accept uncontroverted, nonconclusional factual allegations in the complaint). Therefore any alleged contacts with Texas that are attributed to Endurance Dealers by Plaintiffs are not considered

---

[5]Defendant filed a notice of filing supplement in order to attach the certificate of good standing and 2013 annual report that it referenced in the Chernawsky Declaration but inadvertently omitted on March 24, 2014. (doc. 21.) Plaintiffs filed a motion to exclude, or in the alternative, for leave to file a sur-reply, arguing that the addition of the certificate of good standing and the 2013 annual report to the Chernawsky Declaration constituted new evidence. (doc. 22.) They were granted leave to file a sur-reply only to address Defendant's certificate of good standing and 2013 annual report. (doc. 29.) These documents do not constitute new evidence because they were referenced in the Chernawsky Declaration and inadvertently omitted. In any event, the documents themselves were not considered for purposes of the 12(b)(2) motion to dismiss.

[6]Despite the fact that Endurance Dealers is not a named defendant, Plaintiffs also contend that they sued Endurance Dealers. (doc. 19 at 7.) They cite paragraph 2 (pages 2 and 3) of their second amended complaint where they essentially contend that the defendants were individually sued for their part in the alleged improper acts, including the acts of their officers, employees, corporate entities, and subsidiaries, among others, over whom they exercise supervision or control. (*See* doc. 5 at 2-3.) However, this representation in the second amended complaint does not, in fact, serve to add any of those unnamed individuals or entities as defendants in the lawsuit. Simply representing that a defendant is being sued for the actions of an individual or entity over whom it asserts supervision or control does not also mean that one is suing the supervised or controlled individual or entity.

[7]Plaintiffs filed an sworn declaration support of their sur-reply without leave. (doc. 34-1.) Because Defendant did not have a meaningful opportunity to respond, the declaration has not been considered. *See Spring Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.) ("where a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them").

for purposes of the 12(b)(2) motion to dismiss.

Moreover, although Plaintiffs "fervently reject" the truthfulness of the Chernawsky Declaration regarding Defendant's lack of contacts with Texas, they provide no admissible counter-affidavits or other evidence to dispute any of Chernawsky's statements.[8]  (*See* doc. 19 at 14.) Therefore, the only facts presented by Plaintiffs that are considered by this Court for purposes of Defendant's 12(b)(2) motion are the uncontroverted facts alleged in the second amended complaint. *See Alpine View Co., Ltd.*, 205 F.3d at 215.

### *1.     Specific Jurisdiction*

As discussed, specific jurisdiction over a non-resident defendant exists when the nonresident has purposefully directed its activities at the forum state.  *Alpine View Co. Ltd.*, 205 F.3d at 215. Specific jurisdiction is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction.  *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Plaintiffs' asserted claims arise out of Defendant's alleged use, re-disclosure, re-sale, and purchase of Plaintiffs' motor vehicle records "which resulted in a marketing and solicitation letter being sent to Plaintiff[s]". (doc. 5 at 6-7.)  Therefore, the relevant contacts for purposes of the specific jurisdiction inquiry are the alleged use, re-disclosure, re-sale, and purchase of Plaintiffs'

---

[8]Plaintiffs provide a link in their response to a website called "Bizapedia," which purportedly lists the different states that Endurance Dealers is registered to do business in.  Not only is the "evidence" on the website not considered because it is about Endurance Dealers and not Defendant, but such "evidence" included on the website would constitute inadmissible hearsay.  *See St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp.2d 773, 774 (S.D. Tex. 1999)("There is no way Plaintiff can overcome the presumption that the information he discovered on the Internet is inherently trustworthy, [and] any evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules found in FED. R. CIV. P. 807.")

Plaintiffs also attach a declaration to their sur-reply. As mentioned above, any new allegations or evidence presented in connection with Plaintiffs' sur-reply will not be considered for the purpose of Defendant's 12(b)(2) motion.

motor vehicle records in Texas and the marketing and solicitation letters sent to the Texas Plaintiffs.[9] Plaintiffs present no other allegations or evidence relating to their claims regarding Defendant's alleged activities purposefully directed at Texas.

These contacts do not constitute the contacts necessary to establish specific jurisdiction. For one, Defendant is alleged to have re-disclosed and resold Plaintiffs' motor vehicle records to the other defendants. (*See* doc. 5 at 12 ("Defendants KMB, Blank, DSOA, and CIS...re-disclosed and re-sold their motor vehicle records to [Defendant]"); 26 ("CIS...resold the motor vehicle records to [Defendant]")). Plaintiffs have not explained or alleged how such acts occurred "within Texas". (*See* doc. 5 at 6-7.)

Also, it is well established that purchasing items and services from and mailing payments to a resident defendant as well as corresponding extensively with a resident defendant are not sufficient to establish specific jurisdiction - even coupled with entering into a contract with that resident. *See Freudensprung v. Offshore Technical Services, Inc.*, 373 F.3d 327, 345 (5th Cir. 2004) (finding that purchasing the services of a resident via a contract, initiating a long-term business relationship with that resident, communicating with that resident regarding the development and execution of the contract, and wiring money to that resident in Texas did not indicate that the defendant intended to avail itself of the privilege of doing business in Texas); *Stuart v. Spademan*, 772 F.2d 1185, 1192-93 (5th Cir. 1985); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). For instance, in *Holt*, the defendant's contacts with Texas relating to the claims alleged

---

[9]Plaintiffs' allegations regarding Defendant's website are not relevant for purposes of specific jurisdiction because the second amended complaint makes no allegations that link Plaintiffs' claims to any use or access of the websites. For instance, it does not allege that Plaintiffs contracted with Defendant via the website or even accessed the website.

in the lawsuit were that (i) it entered into a contract with plaintiff, a Texas corporation, (ii) it sent a final agreement from Oklahoma to Texas, (ii) it send three payments to Texas, and (iv) it engaged in extensive telephonic and written communication with plaintiff. 801 F.2d at 778. The court found that these contacts were "limited" and did not support the exercise of specific jurisdiction.[10] *Id*. It noted that "merely contracting" with a resident of Texas and communicating with Texas "in the course of developing and carrying out the contract was in itself" insufficient to "constitute purposeful availment of the benefits and protections of Texas law." *Id*.

Similarly, in *Stuart*, the Court looked to "factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing" in order to determine whether the defendant had sufficient contacts 772 F.2d at 1193. In that case, (i) the defendant entered into a contract with Texas residents; (ii) the defendant shipped ski bindings to plaintiffs in Texas; (iii) the defendant or his attorneys and the plaintiffs exchanged letters and telephone calls regarding the assignment and reissuance of the subject patent; (iv) the contract included a choice-of-law provision that anticipated application of Texas law; (v) the defendant's corporation advertised and shipped its products to Texas; and (vi) defendant's corporation marketed the modified bindings in Texas. *Id*. at 1192. The Court found that the defendant's shipments of two bindings to the plaintiffs in Texas was of little weight, and the communications between the defendant and plaintiffs leading up to the contract, whether originating in Texas or California, were insufficient to confer jurisdiction. *Id*. at 1193-94. It noted that the quality of contacts is the issue when determining purposeful availment, not the number of contacts. *Id*. at 1194. Finally, the Court found that the

---

[10]The Court noted that given the fact that the material performance of the contract was centered outside of the forum state, the fact that defendant mailed payments to the forum state did not weigh heavily in its determination. *Id*. at 778.

defendant's mailing of payments to the plaintiffs in Texas was insignificant to its determination. *Id*. Considering the totality of circumstances, the Court concluded that the defendant did not have the minimum contacts necessary to establish jurisdiction over defendants. *Id*.

Here, it has not been alleged that Defendant entered into contracts with the Texas Plaintiffs. Based on Fifth Circuit precedent, the fact that Defendant mailed a "solicitation and marketing" letter to the Texas Plaintiffs and re-disclosed, purchased and/or sold their motor vehicle records to nonresident defendants (as opposed to Texas residents) is not enough to find that Defendant purposefully availed itself of the privileges of the State of Texas. Notably, Defendants are not alleged to have had any prior relationship or any course of dealing with either of the Texas Plaintiffs, and Defendant's alleged communication with each of the Texas Plaintiffs was limited to a single, mass-distributed and impersonal letter.

Accordingly, Plaintiffs have not made a *prima facie* showing of specific jurisdiction as to the Defendant.

### 2. *General Jurisdiction*[11]

A court may assert general jurisdiction over a nonresident defendant when the defendant's contacts are substantial, continuous, and systematic. *Central Freight Lines*, 322 F.3d at 381 (citing *Helicopteros Nactionales*, 466 U.S. at 414). As recently reaffirmed by the Supreme Court, these contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct.

---

[11] Although Plaintiffs appear to admit that Defendant's contacts with the forum state do not support a finding of general jurisdiction, the issue is addressed out of an abundance of caution. (*See* doc. 19 at 9, 13, 18 (arguing that personal jurisdiction over Defendant in this forum is proper because Defendant has established minimum contacts in Texas to confer specific personal jurisdiction and exercising personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice)).

2846, 2851 (2011). The Fifth Circuit has "consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston v. Multidata Systems Int'l. Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008). In determining whether general jurisdiction exists, courts do not examine each of a non-resident's contacts with the forum state in isolation from one another, but examine them "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt*, 801 F.2d at 779.

As noted above, Defendant is a limited liability company with its principal place of business in Northbrook, Illinois. (doc. 5 at 8; doc. 11 at 4.) It sells automotive service contracts directly to consumers throughout the country through direct mail solicitation via its Northbrook office. (doc. 11 at 4.) It sent a "solicitation and marketing letter" to the Texas Plaintiffs, and a solicitation and marketing letter was received by "State Officials." (doc. 5 at 36.) It is the domain registrant for two websites which describe it as a nationally recognized automotive service contract provider. (*Id*. at 26.) It enters into service contracts only at its Northbrook office with customers who respond to its direct mail solicitations. (doc. 11 at 4.) All of its employees work at its Northbrook and Chicago offices, and they have never traveled to Texas to conduct business for Defendant. (*Id*.) Additionally, Defendant has never been licensed to do business in Texas, and it has never maintained a registered agent or any business records in Texas. (*Id*.) It has never owned or leased any property in Texas, never applied for or guaranteed a loan in Texas, never paid a franchise tax in Texas, never maintained a bank account in Texas, and never maintained a telephone, fax number, or office location in Texas. (*Id*. at 5.) Finally, its managers and members are residents of Illinois and have never been physically present in Texas related to any matter alleged in the second amended complaint. (*Id*.)

Defendant's websites do not constitute substantial, continuous, and systematic contacts with Texas sufficient to confer general jurisdiction. In *Mink v. AAAA Development LLC*, 190 F.3d 333 (5th Cir. 1999), the Fifth Circuit adopted the "sliding scale" test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997), to analyze when a website can give rise to the court's exercise of personal jurisdiction. 190 F.3d 333, 336 (5th Cir. 1999). However, the Fifth Circuit has cautioned that the sliding scale approach articulated in *Mink* "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contact required for a finding of general jurisdiction - in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2000)(emphasis in original).[12]

Here, although maintenance of an Internet website is, in a sense, a continuous presence everywhere in the world (*see Revell*, 317 F.3d at 471), the uncontroverted contacts of Defendant with Texas are not substantial, systematic, or continuous in any way. Plaintiffs merely allege that Defendant is the domain registrant of the websites which describe it as a nationally recognized company who provides automotive service contracts direct to consumers. (doc. 5 at 26.) Plaintiffs have not alleged any facts or provided any evidence that Defendant's maintenance of the two

---

[12]The *Mink* "sliding scale" test analyzes Internet use on a three-point spectrum. At one end of the spectrum, a defendant "merely establishes a passive website that does nothing more than advertise on the Internet." *Mink*, 190 F.3d at 336. Personal jurisdiction is not appropriate based on a passive website. *See id.* On the other end of the spectrum, a defendant does business over the Internet by entering into contracts with residents of other states which 'involves the knowing and repeated transmission of computer files over the Internet...'" *Id*. (quoting *Zippo*, 952 F. Supp. at 1124). Personal jurisdiction is proper over the defendant in this situation. *See id.* In the middle of the spectrum are cases where a defendant website allows a visitor to exchange information with a host computer. *Id*. In this case, the exercise of jurisdiction is determined by the level of interactivity and the commercial nature of the exchange of information on the website. *Id*.

13

websites is in any way substantial, continuous, or systematic in Texas. *See Revell*, 317 F.3d at 471(finding no general jurisdiction over defendant who maintained a website where it did not conduct regular business in Texas and did not make a substantial part of its business decisions in Texas); *Bell v. YWCA, USA, and YWCA of Greater Houston*, No. H-10-2179, 2010 WL 3909171, at *6 (S.D.Tex. Oct. 1, 2010)(finding the mere existence of a website through which customers in Texas or elsewhere can theoretically purchase [products] is not evidence of substantial, continuous, and systematic contacts required for a finding of general jurisdiction.").

Similarly, Defendant's mailing of a couple of "solicitation and marketing" letters to Texas residents as well as its direct mail solicitation to potential customers and subsequent sale of service contracts in Illinois, to the extent those solicitations and sales were made to Texas residents, is not the kind of "substantial, continuous, and systematic" contacts with Texas sufficient to support a finding of general jurisdiction. *See Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 376 (5th Cir. 1987) ("[T]hat [defendant] has engaged in a nation-wide advertising program does not support a finding of general jurisdiction."); *Johnston*, 523 F.3d at 612-13 (finding corporate defendant's contact with forum state insufficient to confer jurisdiction despite evidence of national advertising and sale and travel to forum state); *Central Freight Lines*, 322 F.3d at 381 (finding no general jurisdiction even through defendant sent sales people to the forum regularly to develop business, negotiate contracts, and service accounts). Even if Defendant's contacts with Texas have been "continuous and systematic" in some way, and it is not clear that they have, its activities, *in toto*, are not substantial enough to confer general jurisdiction. *See Central Freight Lines*, 322 F.3d at 381 (finding even if defendant's contacts with the state of Texas have been, in some sense, "continuous and systematic," its activities, in *toto*, were clearly not substantial enough to justify subjecting

defendant to suit in Texas based on a theory of general jurisdiction).

Plaintiffs have not made a *prima facie* showing of general jurisdiction as to Defendant.[13] Accordingly, Defendant's motion to dismiss Plaintiff's second amended complaint based on lack of personal jurisdiction should be granted.[14]

### III. RECOMMENDATION

Defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction should be **GRANTED**, and all of Plaintiffs' claims against Defendant should be dismissed without prejudice for lack of personal jurisdiction.

**SIGNED on this 5th day of September, 2014.**

*/s/ Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[13]Since Defendants do not have the requisite minimum contacts with Texas, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *See Southern Copper, Inc. v. Specialloy, Inc.*, No. 00-50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir. 1996).

[14]Since Defendant's motion to dismiss for lack of personal jurisdiction should be granted, the Court does not reach Defendant's 12(b)(6) motion to dismiss for failure to state a claim.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE