## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JANE DOE,** *Individually, and on behalf of a themselves and all others similarly situated individuals*, **TOBY CROSS,** *Individually and on behalf of a themselves and all others similarly situated individuals*, **and ARTHUR LOPEZ,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**COMPACT INFORMATION SYSTEMS, INC.,** *a Washington Corporation*, **DATA SOLUTIONS, OF AMERICA, INC.,** *a Florida Corporation*, **ELIZABETH M. BLANK,** *a Florida Individual*, **ENDURANCE WARRANTY SERVICES,** *a Illinois Corporation*, **KMB STATISTICS, LLC,** *a Florida Corporation*, **and DOE INDIVIDUALS AND CORPORATIONS 1-100 INCLUSIVE,**<br>        **Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 3:13-CV-5013-M** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated April 15, 2014 (doc. 35), this case was referred for pretrial management.  Before the Court are *Data Solutions of America, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction*, filed January 30, 2015 (doc. 94); *Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery and Remove Defendant Data Solutions of America, Inc.'s FRCP 12(b)2 Motion from the Calendar, or in the Alternative, if Such Motion is Denied, Plaintiffs' Response to Defendant Data Solutions of America, Inc.'s FRCP 12(b)2 Motion*, filed February 20, 2015 (doc. 104); and *Plaintiff's Motion for Temporary Stay of Court's Ruling on Defendant Data Solutions of America, Inc.'s Motion to Dismiss to Permit Plaintiff to File a Supplemental Brief in Opposition Due to Newly Obtained Evidence*, filed July 22, 2015 (doc. 136).  Based on the relevant

filings, evidence, and applicable law, the motion to dismiss for lack of personal jurisdiction should be **GRANTED**.  The motions for discovery and to stay are **DENIED**.

## I. BACKGROUND

On December 27, 2013, Jane Doe and Toby Cross, on behalf of themselves and a proposed class of similarly-situated individuals, filed a class action complaint against Data Solutions of America, Inc. (Defendant), Compact Information Systems, Inc. (CIS), Elizabeth M. Blank (Blank), KMB Statistics, LLC (KMB), and Endurance Warranty Services, L.L.C. (EWS), and an unspecified number of unknown individuals and/or entities.  (doc. 1 at 1.)[1]  They alleged violations of their privacy and security rights under the Federal Driver's Privacy Protection Act, 18 U.S.C. § 2721 (the DPPA), violations of the State Motor Vehicle Records Disclosure Acts, breach of bailment, conversion, "invasion of privacy and seclusion and public discovery of private facts," negligence, trespass to personal property/chattels, and unjust enrichment.  (*Id.*)  The plaintiffs filed a second amended complaint[2] adding Arthur Lopez as a plaintiff on December 30, 2013. (doc. 5 at 1.)  Jane Doe is a resident of Manatee County, Florida[3]; Toby Cross is a resident of Anderson County, Texas; Arthur Lopez is a resident of Dallas County, Texas.  (doc. 73 at 10-11.)

Doe, Cross, and Lopez (Plaintiffs) filed a third amended class action complaint[4] on November 22, 2014, adding AccuData Integrated Marketing, Inc. (AIM)[5] as a defendant, excluding

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] The second amended complaint is actually a first amended complaint.

[3] On August 13, 2015, Doe's motion to withdraw and dismiss her claims with prejudice was granted, and her claims against the defendants were dismissed with prejudice.  (doc. 140.)

[4] The third amended complaint is actually a second amended complaint.

[5] On August 13, 2015, all claims against CIS and AIM were dismissed with prejudice.  (doc. 141.)

2

EWS as a defendant[6], and eliminating all the state law claims.[7]  (doc. 73.)  The claims arise from the defendants' alleged use, re-disclosure, resale, and purchase of personal identifying information derived from Plaintiffs' motor vehicle records in Texas and Florida.[8]  (*Id.* at 10-11.)  The third amended complaint alleges that Defendant was a corporation involved in the direct marketing business, it acted as a direct marketing provider specializing in direct mail targeted lists, and it provided assistance to direct marketing entities.  (doc. 73 at 19.)  It also alleges that KMB re-disclosed motor vehicle records to Defendant, who in turn resold them to CIS and AIM, who then resold them to affiliates of CIS and other direct marketing companies "in order to conduct DIRECT MARKETING of Plaintiffs and Class Members, without their express consent." (*Id.* at 25.)  Blank and Defendant allegedly had an ongoing business relationship with CIS and AIM, through which they knew CIS and AIM were "direct marketer providers."  (*Id.* at 60.)  Additionally, "[Defendant] created and sold a motor vehicle database" that included motor vehicle records, and it should have "inquired as to its source." (*Id.* at 63.)  Defendant also allegedly failed to investigate the truthfulness of the stated purpose of CIS's affiliates or investigate whether the affiliates were disclosing the records for a purpose that was permissible under the DPPA.  (*Id.* at 64.)

The third amended complaint additionally asserts that Blank, as Defendant's President, entered into a purchase agreement in February 2011 with CIS whereby CIS acquired Defendant and its vehicle databases. (*Id.* at 19-20.)  Allegedly, the acquisition did not include KMB, and it included

---

[6]EWS was actually dismissed from the lawsuit on September 24, 2014.  (doc. 71.)

[7]The state law claims were for alleged violations of the State Motor Vehicle Records Disclosure Acts, breach of bailment, conversion, "invasion of privacy and seclusion and public discovery of private facts," negligence, trespass to personal property/chattels, and unjust enrichment.

[8]All the defendants are alleged to have used, re-disclosed, resold, and purchased Jane Doe's motor vehicle records only in Florida.

the hiring of Blank and staff.  (*Id*. at 20.)  Finally, it alleges that the defendants "intentionally accessed, on a repetitive basis, and without authorization, government facilities, in order to obtain Plaintiffs' and Class Members' motor vehicle records, intentionally exceeding access authorization, obtaining, and using Plaintiffs' and Class Members' motor vehicle records for impermissible purposes."  (*Id*. at 67.)  Plaintiffs seek an order certifying that the case be maintained as a class action under FED. R. CIV. P. 23(a), (b)(1)(A), (b)(2), and (b)(3), declarations that the defendants' actions violated the DPPA, preliminary and permanent injunctive relief, attorneys' fees and costs, damages, and pre-and post-judgment interest.  (*Id*. at 77-78.)

Defendant was a Florida corporation with its principal place of business in Florida.  (doc. 73 at 7; doc. 94-1 at 3.)  It contends that on January 31, 2011, it sold "substantially all" of its assets to CIS, and it was formally dissolved on September 28, 2012.  (*Id*.)  According to its former President and sole shareholder, Blank, Defendant was in the business of providing marketing services to various clients before it sold its assets.  (doc. 94-1 at 3.)  Blank attests that all of Defendant's employees worked in Florida and never traveled to Texas to do business for it.  (*Id*.)  It was never licensed to do business, or maintained a registered agent, in Texas.  (*Id*.)  It never owned, leased or rented property, never paid franchise taxes or maintained a bank account, and never applied for a loan or acted as a guarantor, in Texas.  (*Id*. at 4.)  Blank contends that Defendant never had any "accounting work" done, never performed administrative functions or held a company meeting, and never maintained any business records, in Texas.  (*Id*. at 4-5.)  It never had any employees or agents who were residents of Texas, all of its officers and directors were residents of Florida, and neither they nor any employees were ever physically present in Texas relating to any matter alleged in this case.  (*Id*.)  Finally, Defendant never maintained a telephone number, fax

number, office location, or address in Texas.  (*Id*. at 4.)

On January 30, 2015, Defendant moved to dismiss Plaintiffs' third amended complaint against it for lack of personal jurisdiction. (doc. 94.) On February 20, 2015, Plaintiffs filed a motion for leave to conduct jurisdictional discovery and remove Defendant's motion to dismiss from the calender, or in the alternative, a response to Defendant's motion to dismiss.[9] (doc. 104.)  On July 22, 2015, Plaintiffs moved for a temporary stay of the ruling on Defendant's motion to dismiss in order to permit them to file a supplemental brief based on newly obtained evidence.  (doc. 136.)

## II. MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

Plaintiffs contend that they need to conduct limited jurisdictional discovery to respond to Defendant's motion to dismiss, and in order to fully determine the "nature, extent, and scope" of Defendant's contacts with Texas.[10]  (doc. 104-1 at 5, 18.)  They argue that the detailed allegations in the third amended complaint, the documents attached to their prior motions, and the evidence attached to the motion for leave make it evident that they need to conduct jurisdictional discovery and also prove that Defendant and the remaining defendants have been engaged in a concerted effort to obtain and use motor vehicle records for purposes that violate the DPPA.  (*Id*. at 16.)  Plaintiffs contend that this evidence directly refutes the assertion in Blank's declaration that Defendant was

---

[9]On March 13, 2015, Plaintiffs filed a reply to their motion for leave to conduct jurisdictional discovery, which included two exhibits.  (doc. 109.)  On March 16, 2015, three days after their deadline to file a reply, Plaintiffs filed an amended reply that excluded the exhibits, although it referenced them.  (doc. 110.)  There appears to be no substantive difference between the two filings, except for the absence of the attachments in the amended reply. Because the original reply has the exhibits, it will be referenced where applicable to the analysis.

[10]Plaintiffs "propose discovery to include twenty-five (25) interrogatories and twenty-five (25) request[s] for admissions per employee."  (doc. 104-1 at 18-19.)  They assert that depositions are not needed, and they propose a 90-day period to allow them to conduct the discovery as well as an additional 20 days following the "close of such discovery" to submit their brief in opposition to Defendant's motion to dismiss.  (*Id*. at 19.)

not involved with obtaining or using Texas motor vehicle records.[11]   (*Id*. at 18.)   According to Plaintiffs, there clearly is a commercial relationship between Defendant and the remaining defendants, and the exact nature of the relationship is not known and requires jurisdictional discovery.   (*Id*. at 16.)   Their motion presents additional factual allegations as well as evidence relating to their claims that Defendant's alleged activities were purposefully directed at Texas.   They contend that limited discovery will flesh out the issues raised by these new allegations, namely, whether Defendant was an agent of CIS, whether Blank and KMB were agents for Defendant, and the manner and extent of those agency relationships.   (*Id*. at 16-17.)   They claim that this information is "crucial to determining whether Plaintiffs have remedies against all the defendants stemming from their commercial relationship with Defendant that would make the joinder of Defendant necessary in this action."   (*Id*. at 17.)

## A.   <u>Legal Standard</u>

A district court has broad discretion regarding whether to conduct jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).   In order to be entitled to jurisdictional discovery, a plaintiff must make a preliminary showing of jurisdiction.   *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).   He must present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."   *HEI Res., Inc. v. Venture Research Inst.*, 2009 WL 2634858, at *7 (N.D. Tex. Aug 26, 2009) (Lynn. J.) (citing *Fielding,* 415 F.3d at 429).   He must state what facts he believes discovery would uncover and how those facts would support personal jurisdiction.   *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000).   "Discovery on matters of personal jurisdiction...need not be permitted

---

[11]Blank's declaration does not state that Defendant was not involved in obtaining or using Texas motor vehicle records.   (*See* doc. 94-1.)

unless the motion to dismiss raises issues of fact.  When lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Wyatt*, 686 F.2d at 284.  The decision to allow jurisdictional discovery is within the discretion of the district court. *Fielding*, 415 F.3d at 419.

Plaintiffs failed to make any specific factual allegations to show that Defendant purposefully directed its alleged tortious conduct toward Texas in support of specific jurisdiction, or that it had contacts that were sufficiently continuous and systematic to confer general jurisdiction.  Although they seek further discovery in order to determine whether an agency relationship exists between Defendant and CIS and between Defendant and Blank and KMB, they fail to make any allegations in the third amended complaint (or even provide sufficient factual allegations as part of their response to the motion to dismiss) regarding agency relationships between or among the defendants. *See Johnson v. Verizon Communications Inc.*, No. 3:10-CV-01764, 2011 WL 13443390, at *5 (N.D. Tex. Apr. 7, 2010) (declining to grant jurisdictional discovery over nonresident defendant where plaintiff failed to make a preliminary showing of jurisdiction over the defendant); *Dymatize Enterprises, Inc. v. Maximum Human Performance*, No. 3:09-CV-1840, 2010 WL 972240, at *8 (N.D. Tex. Feb. 28, 2010), *rec. adopted,* 2010 WL 980996 (N.D. Tex. Mar. 16, 2010) (same); *EsNtion Records Inc. v. JonesTM, Inc.*, No. 3:07-CV-2027, 2008 WL 2415977, at *6 (N.D.Tex. June 16, 2008) (same).

Even taking as true the allegations in Plaintiffs' third amended complaint and their motion for leave, they have simply not alleged sufficient facts to support jurisdiction over Defendant and therefore show they are entitled to jurisdictional discovery.  First,  Plaintiffs seek jurisdictional discovery in order to prove that Defendant directly accessed and used Texas motor vehicle records.

However, they failed to show or explain how Defendant has purposefully availed itself of the privilege of conducting activities in Texas through such actions.  As outlined below, even assuming Plaintiffs did show that KMB and Blank's actions are imputed to Defendant on an agency theory, this would still not establish that Defendant has sufficient contacts with the State of Texas to support personal jurisdiction.  *See Great American Food Chain v. Andreottola*, No. 3:14-CV-1727, 2015 WL 493758, at *8 (N.D.Tex. Feb. 4, 2015) (finding discovery would serve no purpose where the plaintiffs had simply not alleged enough against the defendants to establish sufficient minimum contacts).  Further, it is simply  not clear how Defendant would be subject to jurisdiction as a result of its actions being imputed to CIS as CIS's agent.  First, there are no allegations or evidence suggesting that CIS asserted control over Defendant.  Second, even if CIS did assert control over Defendant, Defendant's alleged access and use of Texas motor vehicle records at its request is simply not enough to confer jurisdiction over Defendant, as discussed more fully below.

**B.**    **New Arguments and Evidence**

As noted, Plaintiffs' motion for leave to conduct jurisdictional discovery presents new allegations and evidence relating to their claims that Defendant purposefully directed its activities at Texas.  They contend that Defendant (1) acted in concert with Blank and KMB to directly access Texas motor vehicles records via a contract with the Texas Department of Motor Vehicles (TxDMV), and (2) contracted with CIS to market motor vehicle records to companies that want to market directly to Texas residents.  (*See* doc. 104-1 at 9-14.)

*1.*    *Direct accessing of Texas motor vehicle records*

First, Plaintiffs provide a copy of a screenshot of a form entitled "Master File/Weekly Tape Vendors" (the Screenshot) as evidence that Defendant directly accessed Texas motor vehicle

records.  (doc. 104-1 at 9-11; doc. 104-2 at 2.)  In a text box entitled "Company/Firm", the Screenshot lists KMB.  (*Id*.)  Out of several different options, a box entitled "Contact Information" is highlighted.  (*Id*.)  Within that box, "Cris Lewis" is listed as the "Contract Contact."  (*Id*.)  Pei Wang is listed as the "Tape Contact" and "Colleen Saenz" is listed as the "Billing Contact"; both have CIS email addresses listed.  (*Id*.)  A box entitled "FTP Address" lists "ftp:/ftp1.techsafari.com" as the address.  (*Id*.)  A box entitled "FTP User ID/Login" bears the notation "dsoa".  (*Id*.)  According to Plaintiffs, the Screenshot reveals information provided by Blank to the TxDMV and implemented by Dataspan, the "states' data processing contractor." (doc. 104-1 at 9.)  They contend that Dataspan used FTP, the standard network protocol used to transfer computer files from one server to another when transferring personal identifying information, in order to send Defendant weekly updates of "Vehicle Title and Registration." (*Id*.)  Although Plaintiffs acknowledge that the Screenshot includes information pertaining to KMB and CIS, they claim that the Screenshot shows that Defendant is the FTP user within the FTP User ID/Login information section.  (*Id*.)  They also assert that the Screenshot shows that the "FTP Address" was directing Texas motor vehicle records to techsafari.com, which apparently is a data mining company that claims to have expertise in direct marketing and consumer data matching.  (*Id*. at 11.)  Plaintiffs contend that the Screenshot proves that Defendant had direct involvement in obtaining and using Texas motor vehicle records.  (*Id*. at 11.)  Additionally, they appear to argue that the Screenshot is evidence of a contract between the TxDMV and Blank and KMB.  (*Id*. at 14.)

Defendant objects to the Court's consideration of the Screenshot on the basis that it is an "unauthenticated, hearsay document that appears to be a screenshot taken from an unknown computer software program." (doc. 108 at 3.)  It also argues that the Screenshot does not suggest

that it obtained records directly from the State of Texas because the Screenshot references KMB and provides a contact email address that is not associated with it.  (*Id*. at 4.)  It further contends that the mere presence of the letters "dsoa" in a text box in front of what appears to be a cursor falls short of suggesting with reasonable particularity that it purposefully availed itself of the privileges and benefits of Texas by obtaining records directly from the State of Texas.  (*Id*.)

The Screenshot is not authenticated.[12]  (*See* doc. 104-2 at 2.)  It therefore constitutes inadmissible hearsay.[13]  (*See* FED. R. CIV. P. 803, 901.)  Even if it was competent evidence, it does not show on its face that Defendant directly assessed Texas motor vehicle records.  Nor does it show that Defendant, or KMB, Blank or CIS, entered into a contract with the TxDMV.  Plaintiffs have failed to make a sufficient showing that Defendant directly accessed Texas motor vehicle records or entered into a contract with the TxDMV to warrant jurisdictional discovery.

### 2.    *Agency relationship with KMB and Blank*

Plaintiffs also contend that Defendant acted in an agency relationship with KMB and Blank "while obtaining motor vehicles records in Texas."  (doc. 104-1 at 11.) They contend that KMB "existed as a conduit for Defendant Blank in order to obtain [motor vehicles records] from states by

---

[12]Plaintiffs assert in their reply that the document is a public record.  (doc. 109 at 5.)  It fails to comport with any of the self-authenticating items of evidence outlined in Rule 902 of the Federal Rules of Evidence, however.  *See* FED. R. EVID. 902.

[13]In their reply, Plaintiffs provide their attorney's sworn declaration seeking to authenticate the Screenshot as well as an attached email from a TxDMV employee purporting to attach the Screenshot.  (doc. 109-1 at 2.) They also raise the new allegation that Defendant and CIS were acting as a single business enterprise when obtaining Texas motor vehicle records.  (*Id*. at 6.)  Because Defendant did not have a meaningful opportunity to respond, the declaration and its exhibits have not been considered.  *See Spring Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.) ("where a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them"); *Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03-CV-0330-G, 2003 WL 21435511, at *1 (N.D.Tex. June 10, 2003)("[A] court generally will not consider arguments raised for the first time in a reply brief.").  Even if considered, however, the Screenshot simply does not reflect that Defendant accessed Texas motor vehicle records or that it, KMB, Blank, or CIS entered into a contract with the TxDMV.  Also, the email is hearsay to the extent Plaintiffs attempt to use it to prove the truth of the matters asserted in it.

using its corporate identity as a 'statistics' company so as to alleviate scrutiny  by State MVR Department as to permitted DPPA use." (*Id*. at 12.)  Plaintiffs assert that KMB, acting in an agency relationship with Defendant to create a single business enterprise, obtained and used the motor vehicles records for direct marketing purposes in violation of the DPPA.  (*Id*.)  They then list ten "corporate similarities," which they contend exist between KMB and Defendant to support their contention that the two entities were a single business enterprise.

### a.    *Agency Relationship*[14]

"The actions of an agent may establish minimum contacts over a principal." *McFadin*, 587 F.3d at 761.  "As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, ____ U.S.____, 134 S.Ct. 746, 759 n.13 (2014) (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987)).  Under Texas law, in order to prove agency "evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 364 (5th Cir. 2008).  An agency relationship must be affirmatively established and not presumed. *See Coffey v. Fort Wayne Pools, Inc.*, 24 F.Supp.2d 671, 677 (N.D. Tex. 1998).

Plaintiffs fail to allege that Defendant directed Blank or KMB to take any action with respect to Texas.  There are no allegations that Defendant assigned any tasks to Blank or KMB concerning Texas and that it controlled or had the means to control such a task.  Plaintiffs' conclusory allegation that Defendant acted in an agency relationship with KMB and Blank in order to obtain motor vehicle

---

[14]Although Plaintiffs reference an agency relationship between Blank and KMB and Defendant, they do not specifically argue that Blank's and KMB's contacts with Texas may be imputed to Defendant under an agency theory.  This argument is addressed in an abundance of caution because Defendant addresses it in its response to Plaintiffs' motion for leave.

records from Texas does not meet the burden necessary to impute Blank's or KMB's actions to Defendant under an agency theory. *See Havel v. Honda Motor Europe Ltd.*, No. H-1291, 2014 WL 4967229, at *15 (S.D. Tex. Sept. 30, 2014) (finding the plaintiffs did not meet the burden necessary to impute a defendant's actions to another where the defendant never directed the other defendant to "take action" with respect to the State of Texas and the plaintiffs did not allege or show how the defendant "direct[ed] its agents or distributors to take action" with respect to Texas).

      ***b.***      ***"Single Business Enterprise Theory"***

"The 'single business enterprise theory' is based on equity and arises from partnership principles: it applies when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose." *El Puerto De Liverpool, S.A. De C.V. v. Servi Mundo Llantero S.A. De C.V.*, 82 S.W.3d 622, 636-37 (Tex. App. 2002, pet. dism'd w.o.j.)(citing *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 120 (Tex. App. 2001, no pet.) In determining whether two corporations are operated as a single business enterprise, courts consider several nonexhaustive factors, including: (1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of the other; (7) undocumented transfers of funds between corporations; (8) unclear allocations of profits and losses between corporations; and (9) common ownership. *De La Hoya v. Coldwell Banker Mexico, Inc.*, 125 Fed. App'x 533, 538 (5th Cir. 2005)(citing *Bridgestone Corp. v. Lopez*, 131 S.W.3d 670, 681-82 (Tex. Ct. App. 2004) and *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536-37 (Tex. Ct.App. 1986)). Plaintiffs' burden of demonstrating a *prima facie* case of personal jurisdiction through the single business enterprise theory is less stringent than the

standard they must meet at trial for proving single business enterprise liability.  *See Berry v. Lee*, 428 F. Supp.2d 546, 553-54 (N.D. Tex. 2006).

Plaintiffs' conclusory statement that there was a single business enterprise and their laundry list of factors is not sufficient to allege a *prima facie* case that Defendant and KMB were part of a single business enterprise.  *See Panda Brandywine Corp.*, 253 F.3d at 869.

In their reply, Plaintiffs argue that state incorporation documents show that: (1) Blank was the President and Director of both KMB and Defendant; (2) KMB and Defendant had common directors, officers, and registered agents in Blank and her parents, Marilyn and Kenneth Blank; and (3) Marilyn and Kenneth Blank's residence was the place of business for KMB.  (doc. 109 at 6.) For one, they have failed to provide any state incorporation documents that show this information. Additionally, it is not clear how the fact that Marilyn and Kenneth Blank's residence was the place of business for KMB supports a finding that KMB and Defendant have operated as a single business enterprise.  Plaintiffs also argue in their reply that "website company information" provided in the third amended complaint shows that KMB and Defendant had a common employee in Marilyn Blank.  (*Id.*)  However, there is no website information in the third amended complaint to support this claim.  They also argue that Blank "controlled each and every facet of both companies, exerting administrative control over the operations, as revealed by the incorporation documents, state corporate filing documents, company website information, and state motor vehicle purchase contracts." (doc. 109 at 6.)  Plaintiffs have not, however, provided any of the named documents, and it is not part of the discovery they seek.  Also, the fact that Blank controlled "each and every facet" of each entity would not necessarily support a finding of a single business enterprise between the two entities.  Finally, Plaintiffs allege that KMB and Defendant shared the property of one entity

with "the other joint enterprise" and KMB and Defendant rendered services by the employees of one entity on behalf of the other entity, as revealed by "Exhibit A and B." (*Id.*)  As outlined above, the exhibits to the reply are not competent evidence, and even assuming they are, they do not establish that KMB and Defendant shared each other's property or that their employees rendered services on behalf of each entity.

Plaintiffs failed to make a *prima facie* showing that Defendant and KMB operated as a single business enterprise.

### c.     Conduct "aimed" at Texas

Finally, Plaintiffs contend that the Court has personal jurisdiction over Defendant because "violations of the [DPPA] permit a civil action" to be filed in the forum of the injured parties, Plaintiffs are Texas residents that have been harmed in Texas by Defendant, and the effects of Defendant's intentional acts were felt in Texas as a result of Defendant aiming its conduct at Texas. (doc. 104 at 13-14.)  They argue that they made a *prima facie* showing that Defendant directly aimed its conduct at Texas by entering into a contract with the TxDMV to obtain Texas motor vehicle records.  (doc. 104-1 at 14.)  They claim that this made Texas the "focal point" for Defendant's activities and that of the direct marketers who purchased Texas motor vehicle records obtained by Defendant in order to directly market them to Texas residents. (*Id.*)  In essence, Plaintiffs contend that Defendant aimed its conduct at Texas when it obtained motor vehicle records from the TxDMV via a contract and then sold the records to direct marketers who then directly marketed to Texas residents, such as Plaintiffs and class members.

Based on their contentions in the "Legal Standard" section of their motion for leave, Plaintiffs appear to be making an argument for application of the "effects test" outlined in *Calder*

*v. Jones*, 465 U.S. 783, 789-90 (1984).  Under the "effects tests," an "act done outside the state that

has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising

from those consequences if the effects are seriously harmful and were intended or highly likely to

follow from the nonresident defendant's conduct."  *McFadin*, 587 F.3d at 761 (citing *Calder*, 465

at 789-90).  Although the Fifth Circuit has applied the "effects test" to torts, "[f]oreseeable injury

alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the

forum."  *McFadin*, 587 F.3d at 762 (citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th

Cir. 1999)).  Accordingly, Plaintiffs must show that Defendant aimed its conduct at Texas.

Here, Plaintiffs have failed to allege sufficient facts to show that Defendant directly aimed

its conduct at Texas in their complaint, or in their motion for leave to conduct jurisdictional

discovery.  They do not sufficiently allege that Defendant entered into a contract with the TxDMV

to obtain Texas motor vehicle records, or that Defendant engaged in a single business enterprise with

KMB or was in agency relationship with Blank or KMB in order to obtain and sell Texas motor

vehicle records.

In conclusion, the discovery Plaintiffs seek will not add any significant facts.  *See Wyatt v.*

*Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).  Their motion for leave to conduct jurisdictional

discovery is therefore denied.

### III.  MOTION FOR TEMPORARY STAY

Based on newly obtained evidence, Plaintiffs request a stay of any ruling on the motion to

dismiss in order to file a supplemental brief in opposition.  (doc. 136 at 3.)  They contend that

Defendant claimed in its motion to dismiss that KMB did not provide it with Texas motor vehicle

records, and that its employees did not access motor vehicle records obtained from the TxDMV.

(*Id* at 2.) Similarly, they contend that Blank "denied obtaining, and claimed no knowledge of [motor vehicle records] being sent from the Florida Motor Vehicle Department to locations in Texas and Wisconsin." (*Id.*) They assert that their counsel has recently "learned otherwise" and questions whether KMB, Blank, and Defendant provided false information to the Court. (*Id.*)[15]

Plaintiffs' counsel submits a sworn declaration in which he swears that Reuben Kennedy, the CEO of Techsafari, sent him an email in which he stated that he received data from the TxDMV on behalf of Blank and Defendant, and he had "no knowledge about [KMB], [and] had never done any work for KMB." (doc. 136-1 at 3.) Plaintiffs' counsel also swears that he had a recent conversation with Adam Hobach, the CEO of CyberLynk Network, Inc, who is the owner of the "Wisconsin ISP that was sent [motor vehicle records] from the Florida Motor Vehicle Department." (*Id.*) He contends that Mr. Hobach advised him that "Blank did in fact have an account with his ISP."[16] (*Id.*)

To the extent Plaintiffs are able to provide the Court with evidence that Mr. Kennedy advised him that he received information from the TxDMV on behalf of Blank and Defendant and that Blank had an account with "the Wisconsin ISP", it would not warrant a stay of the motion to dismiss. As outlined below, the fact that KMB or Defendant's employees accessed motor vehicle records from the TxDMV is insufficient to confer jurisdiction over Defendant in Texas. Also, the fact that Blank

---

[15] It is noted that Defendant did not claim in its motion that KMB did not provide it with Texas motor vehicle records, or that its employees did not access motor vehicle records obtained from the TxDMV. Also, Defendant and Blank did not deny in the motion to dismiss obtaining vehicle records from Florida or having knowledge of records being sent from the Florida Motor Vehicle Department to Texas and Wisconsin. In fact, such allegations regarding the Florida Motor Vehicle Department and Florida were not even made by Plaintiffs in the third amended complaint.

[16] Besides Plaintiffs' counsel's declaration, it is not clear exactly what the newly-obtained evidence is. Despite Plaintiffs' counsel's contention in the declaration that the attached exhibits provided support for the motion to stay, no exhibits were attached. Presumably, in addition to his declaration outlining his conversation with Mr. Hobach, the new evidence is the referenced email from Mr. Reuben Kennedy.

had an account with a "*Wisconsin* ISP" that received motor vehicle records from *Florida* does not, in any way, establish that Defendant had the necessary contacts with the state of Texas to establish personal jurisdiction.

Plaintiffs' motion for temporary stay of the motion to dismiss is denied.

### IV.  12(b)(2) MOTION TO DISMISS

Defendant moves to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction. (*See* doc. 94.)

The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent as a state court in the same forum.  *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); *see also* FED. R. CIV. P. 4(e)(1), 4(h)(1).  Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq*.  "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice."  *Panda Brandywine Corp.*, 253

F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A defendant must not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or third person." *Electrosource, Inc. v. Horizon Battery Techs, Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999)(citing *Burger King Corp.*, 471 U.S. at 475) (internal citations omitted). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3091 (2011). General jurisdiction exists where the nonresident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. Ltd.*, 205 F.3d at 215 (quoting *Burger King Corp.*, 471 U.S. at 472) (internal quotation marks omitted). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).[17]

---

[17]Where, as here, the court does not conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing in support of jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The Court must accept that party's uncontroverted factual allegations in the complaint as true and resolve in its favor all factual disputes contained in the parties' affidavits. *Alpine View Co., Ltd.*, 205 F.3d at 215;

A.     **Specific Jurisdiction**

Defendant argues that the third amended complaint fails to allege facts supporting the existence of *in personam* jurisdiction over it.  (doc. 95 at 6.)  It contends that it did not purposefully avail itself of the privileges and benefits of the State of Texas.   (*Id*. at 13-14.)

Specific jurisdiction is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction.  *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Here, the third amended complaint alleges that Defendant purchased or received Plaintiffs' motor vehicle records from KMB and Blank, nonresident defendants, and re-disclosed and resold them to CIS and AIM, who are also nonresident defendants.  (*See* doc. 73 at 10 ("Defendant KMB and Blank used, re-disclosed, and resold their motor vehicle records to [Defendant] for impermissible DPPA purposes"); 25 ("[Blank] signed a contract on behalf of ... [KMB], which then re-disclosed the motor vehicles records to ... [Defendant], which then resold the motor vehicle records to ... [CIS and AIM]."))   Plaintiffs have not explained or alleged how these acts occurred "within Texas."   They also do not allege that Defendant sold any records to Texas residents or directly marketed to Texas residents.  Defendant allegedly resold records to a nonresident who then resold the records to other entities who directly marketed to Texas residents; this indirect contact with Texas residents is too attenuated to confer jurisdiction on Defendant.  *See Havel v. Honda Motor Europe Ltd.*, No. H-13-1291, 2014 WL 4967229, at *13 (S.D.Tex. Sept. 30, 2014) (finding, in a copyright infringement case concerning an image of a sculpture made in Houston by Houston residents, that a defendant's own contacts with Texas were too "random, fortuitous, or attenuated"

*Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  It is not required "to credit conclusory allegations, even if uncontroverted," however.  *Panda Brandywine Corp.*, 253 F.3d at 869.  The Court therefore only considers Plaintiffs' uncontroverted, nonconclusory allegations in the third amended complaint and any competent evidence they provide to counter Defendant's evidence.

to satisfy due process where defendant knew the image was based in Houston, that the image's copyright belonged to Houston residents, and that others working on the subject project contacted the Houston residents but where there were no allegations connecting defendant's conduct to Texas); *see also Walden v. Fiore*, ____ U.S.____, 134 S.Ct. 1115, 1123, 188 L.Ed.2d 12 (2014)("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction ... Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."); *Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contact with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

Additionally, even considering Plaintiffs' new arguments and evidence in the response, and assuming that they sufficiently alleged that Defendant obtained Texas motor vehicle records directly, that KMB and Blank were agents for Defendant, or that KMB and Defendant were part of a single business enterprise, they still fail to make a showing that Defendant would be subject to the Court's jurisdiction.  As mentioned above, Plaintiffs contend that through the agency relationship and the single business enterprise, Defendant directly obtained and used Texas motor vehicle records for direct marketing purposes and therefore "aimed" its conduct at Texas.  They have not explained how such acts occurred "within Texas" or how Defendant aimed its conduct at Texas via such acts.  Although they contend that KMB, and consequently Defendant, via an agency relationship, entered into a contract with the TxDMV to obtain motor vehicles records, they fail to point to any evidence of such a contract.  In any event, it is well established that purchasing items and services from a

Texas resident and corresponding extensively with a resident are not sufficient to establish specific jurisdiction - even coupled with entering into a contract with that resident.  *See Freudensprung v. Offshore Technical Services, Inc.*, 373 F.3d 327, 345 (5th Cir. 2004) (finding that purchasing the services of a resident via a contract, initiating a long-term business relationship with that resident, communicating with that resident regarding the development and execution of the contract, and wiring money to that resident in Texas did not indicate that the defendant intended to avail itself of the privilege of doing business in Texas); *Stuart v. Spademan*, 772 F.2d 1185, 1192-93 (5th Cir. 1985); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).  For instance, in *Holt*, the defendant's contacts with Texas relating to the claims alleged in the lawsuit were that (1) it entered into a contract with plaintiff, a Texas corporation, (2) it sent a final agreement from Oklahoma to Texas, (3) it send three payments to Texas, and (4) it engaged in extensive telephonic and written communication with plaintiff.  801 F.2d at 778.  The Court found that these contacts were "limited" and did not support the exercise of specific jurisdiction.[18]  *Id*.  It noted that "merely contracting" with a resident of Texas and communicating with Texas "in the course of developing and carrying out the contract was in itself" insufficient to "constitute purposeful availment of the benefits and protections of Texas law."  *Id*.

Similarly, in *Stuart*, the court looked to "factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing" in order to determine whether the defendant had sufficient contacts.  772 F.2d at 1193.  In that case, (1) the defendant entered into a contract with Texas residents; (2) the defendant shipped ski bindings to plaintiffs in

---

[18]The Court noted that given the fact that the material performance of the contract was centered outside of the forum state, the fact that defendant mailed payments to the forum state did not weigh heavily in its determination. *Id*. at 778.

Texas; (3) the defendant or his attorneys and the plaintiffs exchanged letters and telephone calls regarding the assignment and reissuance of the subject patent; (4) the contract included a choice-of-law provision that anticipated application of Texas law; (5) the defendant's corporation advertised and shipped its products to Texas; and (6) defendant's corporation marketed the modified bindings in Texas. *Id*. at 1192. The court found that the defendant's shipments of two bindings to the plaintiffs in Texas was of little weight, and the communications between the defendant and plaintiffs leading up to the contract, whether originating in Texas or California, were insufficient to confer jurisdiction. *Id*. at 1193-94. It noted that the quality of contacts is the issue when determining purposeful availment, not the number of contacts. *Id*. at 1194. Finally, the Court found that the defendant's mailing of payments to the plaintiffs in Texas was insignificant to its determination. *Id*. Considering the totality of circumstances, the court concluded that the defendant did not have the minimum contacts necessary to establish jurisdiction over defendants. *Id*.

Likewise, Plaintiffs have not made a *prima facie* showing of specific jurisdiction here.

## B.  <u>General Jurisdiction</u>[19]

Defendant also argues that Plaintiffs fail to allege that it did anything at all in Texas, including the sort of contacts necessary to confer general jurisdiction. (doc. 95 at 12.) It contends that there is "clearly" no evidence that it had "continuing and systematic" contacts with Texas. (*Id*.)

A court may assert general jurisdiction over a nonresident defendant when the defendant's contacts are substantial, continuous, and systematic. *Central Freight Lines*, 322 F.3d at 381 (citing

---

[19] It is not clear whether Plaintiffs contend that Defendant's contacts with Texas support a finding of general jurisdiction because all of their arguments for conferring jurisdiction on Defendant are related to the causes of action asserted in the third amended complaint.

*Helicopteros Nactionales*, 466 U.S. at 414).  As recently reaffirmed by the Supreme Court, these contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011).  The Fifth Circuit has "consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston v. Multidata Systems Int'l. Corp.*, 523 F.3d 602, 610-11 (5th Cir. 2008).  In determining whether general jurisdiction exists, courts do not examine each of a non-resident's contacts with the forum state in isolation from one another, but examine them "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt*, 801 F.2d at 779.

As noted above, Defendant is a corporation formed and operated in Florida only.  (doc. 73 at 7; doc. 94-1 at 3.)  Before it sold its assets, it was in the business of providing marketing services to clients.  (doc. 94-1 at 3.) All of its employees work in Florida, and they have never traveled to Texas to conduct business for Defendant.  (*Id.*)  Additionally, Defendant has never been licensed to do business in Texas, and it has never maintained a registered agent or any business records in Texas.  (*Id.*)  It has never owned or leased any property in Texas, never applied for or guaranteed a loan in Texas, never paid a franchise tax in Texas, never maintained a bank account in Texas, and never maintained a telephone number, fax number, or office location in Texas.  (*Id*. at 3-4.)  Finally, its officers and directors are residents of Florida and have never been physically present in Texas related to any matter alleged in the third amended complaint.  (*Id.*)

Also, the third amended complaint does not allege that Defendant made any contacts with

Texas - substantial, continuous, systematic or otherwise.[20]   Accordingly, Plaintiffs have not made a *prima facie* showing of general jurisdiction as to Defendant.[21]   Defendant's motion to dismiss Plaintiffs' third amended complaint against it based on lack of personal jurisdiction should be granted.

## V.   RECOMMENDATION

Defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction should be **GRANTED**, and all of Plaintiffs' claims against Defendant should be dismissed without prejudice for lack of personal jurisdiction.

**SIGNED on this 25th day of August, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[20]Plaintiffs do allege in their response that Defendant accessed Texas motor vehicle records on a continuous and systematic basis as evidenced by the Screenshot.  (doc. 104-1 at 13.)  However, as noted, the Screenshot constitutes inadmissible hearsay and does not show on its face that Defendant directly accessed Texas motor vehicle records.

[21],Defendant argues that exercising personal jurisdiction over it would offend traditional notions of fair play and substantial justice.  (doc. 95 at 14-15.)  Since Defendant does not have the requisite minimum contacts with Texas, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice.  *See Southern Copper, Inc. v. Specialloy, Inc.*, No. 00-50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir. 1996).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE